**BETHLEHEM MINES CORPORATION,
Appellant,**

v.

**Arthur DAVIS et al., Appellees.**

Court of Appeals of Kentucky.

May 17, 1963.

Harry C. Campbell, Pikeville, for appellant.

Thurman L. Hibbitts, Pikeville, for appellees.

PALMORE, Judge.

On its factual findings that the appellee Davis was totally and permanently disabled by reason of an occupational disease of a respiratory nature acquired while in the employ of the appellant, Bethlehem Mines Corporation, the Workmen's Compensation Board awarded maximum compensation. The employer appeals from a judgment of the Letcher Circuit Court confirming the award.

Davis was 61 years old and had been employed by Bethlehem and its predecessor in

business, Consolidated Coal Company, for 34 or 35 years when he quit on May 3, 1960, because he was physically unable to continue working. During most of his career he worked as a motorman or as a brakeman, which exposed him injuriously to sand and dust. He says that he had been sick for two or three years but had forced himself to work on until he could "make it no longer." He did not know exactly what his trouble was, though he had been examined by Dr. A. F. Judd, chief of medicine at the Whitesburg Memorial Hospital, on July 14, 1959, at which time he was complaining of shortness of breath, a mild ache across the front of the chest that would become aggravated with exertion, and loss of weight. Dr. Judd concluded then "that he had pneumoconiosis and bronchial asthma * * * and possible arteriosclerotic heart disease, angina pectoris." The doctor does not recall whether he discussed these conclusions with Davis at the time, but thinks that probably he did not. Though at the time of giving his deposition he was of the opinion that Davis might have had some degree of disability when examined in 1959, his records did not indicate that he had then reached any conclusion in that respect. Davis testified that the doctor advised him he "had a little dust but not enough to call it silicosis" and told him to go back to work.

The facts thus far recited dispose of the contention that the employer, which did not become aware of Davis' condition until he was again examined shortly after quitting in May of 1960, was not given timely notice. The ambiguous phraseology of KRS 342.316(2) relating to "notice of disability" was construed in Mary Helen Coal Corporation v. Chitwood, Ky.1961, 351 S.W. 2d 167, to mean that the duty to notify does not arise before the disease results in an actual impairment of the employe's capacity to perform his work. This ruling necessarily had the effect of overruling Osborne Mining Corporation v. Barrera, Ky.1960, 334 S.W.2d 917, since it is the opinion of the court that so long as a man is able to carry on his duties, though he may suffer while doing it, he is not yet disabled within the meaning of KRS 342.316(2).

After he quit work on May 3, 1960, Davis was examined by four physicians, two of whom testified in his behalf and two in the employer's behalf. One of these examinations was by Dr. Judd, who had seen Davis in 1959. All of the physicians found his ability to breath to be so impaired that there is no question respecting the degree of disability. The dispute centers on the issue of causation.

Dr. Judd found evidence of pulmonary emphysema, mild pulmonary fibrosis, and a number of small punctate shadows (as shown by X-ray) in the lung fields. He interpreted these shadows as representing nodules characteristic of anthracosilicosis, a form of pneumoconiosis, and said the X-ray evidence indicated pneumoconiosis to be definitely present but minimal. The only significant difference from his 1959 examination was that on this occasion Dr. Judd observed a heart murmur not detected in the course of his previous examination. Based on this circumstance and certain historical information he felt that Davis had an aortic insufficiency which "might possibly be contributing to his disability," but "probably contributing very little." There was evidence also of a mild myocardial infarction that apparently had long since healed and was not a factor contributing to present disability. In summary, it was Dr. Judd's opinion that Davis was totally and permanently disabled, principally as the resut of anthracosilicosis. He explained that this conclusion was consistent with a "minimal" appearance of the disease on the X-ray films because such patients "can have minimal X-ray evidence of pneumoconiosis and can have severe pulmonary disability with no other apparent cause than pneumoconiosis." For this reason it is customary to conduct other types of inquiry, such as ventilatory function tests (and, of course, the case history), in order to formulate a valid judgment.

Dr. William H. Anderson, chief of medicine at the Harlan Memorial Hospital, on the basis of case history, physical examination, chest X-rays, electrocardiogram, and pulmonary function studies, found what he called "category two pneumoconiosis or anthracosilicosis with secondary emphysema." He too detected evidence of a myocardial infarction at some time in the past, but was of the opinion that "a previous heart attack does not affect the breathing capacity. A man's breathing capacity is decreased by disease or affliction of the lungs and not this type of heart trouble * * *. I don't think that his previous myocardio [sic] infarction contributes to his inability to work." It was Dr. Anderson's conclusion that the primary cause of Davis' decreased breathing was emphysema caused by "pneumoconiosis or anthracosilicosis, whatever term we wish to use is widely recognized as one of the causes of emphysema."

Dr. Allen L. Cornish, of Lexington, on the basis of substantially the same type of examinations (except for the breathing test) as those made by Drs. Judd and Anderson, found that Davis "was suffering from pulmonary fibrosis and emphysema, as well as leutic heart disease with aortic insufficiency * * *. The electrocardiogram showed a minimal pulmonary fibrosis and moderate pulmonary emphysema." He found no nodulation in the lungs and no evidence of silicosis. The heart condition "could have contributed" to the shortness of breath and chest pains, but the lung condition is "the primary cause of his inability to work." This condition, according to Dr. Cornish, was attributable entirely to pulmonary fibrosis and emphysema, which in turn was caused by "chronic bronchitis with repeated infections," a type of ailment common to the public in general.

Dr. E. R. Gernert, who is engaged in practice at Louisville as a specialist in diseases of the chest and teaches at the University of Louisville's Department of Medicine, also examined Davis and testified as a defense witness. He found, among other things, emphysema and inactive tuberculosis, but no nodulation indicative of silicosis or pneumoconiosis in any form. In his opinion, emphysema, which might have resulted from any of a great number of causes, was the cause of disability. In contrast with the other medical witnesses, Dr. Gernert found Davis' heart condition normal and "very good." (Apparently, however, he did not do an EKG.) Though he did not observe any X-ray evidence of pneumoconiosis, he acknowledged that on the basis of the case history Davis had been sufficiently exposed to have it. The X-rays showed a linear (as distinguished from nodular) type of fibrosis consistent with tuberculosis, but which does not result from pneumoconiosis unless the latter disease has been brought on by cotton dust, asbestos dust or tobacco dust. In the final analysis, Dr. Gernert's testimony with respect to the cause of this patient's emphysema was that he did not know.

Following the referee's award of total permanent benefits the employer moved the Board pursuant to KRS 342.315 to appoint three disinterested physicians to examine the claimant and advise the Board. It is contended that the Board abused its discretion in overruling this motion.

There are, of course, inconsistencies in the medical testimony, the most important of which is that the claimant's witnesses found nodulations indicative of pneumoconiosis whereas the company's witnesses did not. It is pointed out that Drs. Judd and Anderson were young doctors, employed by the union of which Davis is a member, whereas Drs. Cornish and Gernert were self-employed specialists of much experience and outstanding qualifications. It is suggested that the union doctors were biased and the company-selected doctors disinterested, a questionable premise at best. Be that as it may, we are not going to interfere with the discretion of the Board in a matter of this sort unless the alleged abuse is clear and flagrant. We see no such abuse in this case.

On the evidence as a whole, including the testimony of Drs. Cornish and Gernert, we think it would have been most difficult for the Board not to conclude that Davis' lung condition resulted from his years of exposure to sand and dust in the mines, whatever may have been the abstruse physiological phenomena leading to the end product. It is our opinion also that the proof relating to other possible contributing factors was insufficient to require an apportionment.

The judgment is affirmed.