James R. YOCOM, Commissioner,
Kentucky Department of Labor,
etc., et al., Appellants,

v.

Roy R. KARST et al., Appellees.

Court of Appeals of Kentucky.

May 23, 1975.

Earl M. Cornett, Gen. Counsel, William F. Gadd, Asst. Counsel, Kentucky Dept. of Labor, Frankfort, for appellants.

J. W. Craft, Jr., Hazard, for Karst-Robbins Coal Co.

Eugene Goss, Harlan, for appellee Roy R. Karst.

CULLEN, Commissioner.

On the ground that he had not given the *notice of claim* required by KRS 342.-316(2)(a), the Workmen's Compensation Board denied the claim of Roy R. Karst for compensation for total permanent disability from silicosis. On an appeal by Karst to the Harlan Circuit Court judgment was entered setting aside the board's order and directing that an order be entered awarding compensation to Karst. Karst's most recent employer and the Special Fund have appealed from that judgment.

After having worked for the Karst-Robbins Coal Company for a little more than 10 years, Karst quit work in April 1971. He was then 70 years of age and he had worked in coal mines for close to 50 years. The reason he quit work was that he was *unable to work*. A doctor who examined him in April 1971 found him to be suffering from Grade–III silicosis, and Karst was informed of the diagnosis at that time. Karst did not give any notice of claim to Karst-Robbins, after he quit, and he did not file a claim for compensation under the Kentucky Workmen's Compensation law. He remained idle until June 4, 1973, when he returned to work for Karst-Robbins. This latter work episode lasted only two weeks, until June 19, 1973. Karst's testimony was that during these two weeks he was exposed to dust, around the tipple, for a total of about five hours. He quit the work on June 19, 1973, and then gave notice of claim to Karst-Robbins, followed by the filing of the claim for compensation that is here in issue. Karst testified that his condition in 1973 when he returned to work was no better than it was in April 1971 when he first quit; that he was unable to work when he tried it in 1973; and the reason he tried to resume work was that he "needed a little more money." While two doctors testified that the five hours of exposure in June 1973 were capable of contributing to silicosis, neither testified that the exposure did in fact enhance Karst's previous state of *disability*.

The Workmen's Compensation Board was of the opinion that Karst was *disabled* in *1971* from silicosis, and knew it, wherefore he was required to give notice of claim at that time. The circuit court was persuaded that Karst's claim for compensation did not mature or ripen until after his last exposure in 1973, and that his notice of claim filed in 1973 thus was in time.

It is our opinion that the controlling consideration is the time when Karst sustained a disability for which a claim could be asserted. We think it is clear from the record that Karst, suffering from Grade–III silicosis and by his own statement unable to work, had a claim for disability when he quit work in 1971. Being disabled, and having been told of the medical diagnosis of his condition, he was required under KRS 342.316(2)(a) to give notice of claim. The argument made by his attorneys that he did not then *have a claim* is pure sophistry.

Karst's attorneys seek to persuade us that Karst's employment in 1973 was a *continuation* of his former employment, and therefore Karst was not *disabled* in 1971 under our cases holding that so long as the workman continues in full-time employment by the same employer he cannot be considered to be disabled as far as an occupational disease is concerned. See Mary Helen Coal Corp. v. Chitwood, Ky., 351 S.W.2d 167; Stephens Elkhorn Coal Co. v. Tibbs, Ky., 374 S.W.2d 504; Brock v. International Harvester Co., Ky., 374 S.W.2d

507; American Radiator & Standard San. Corp. v. Girth, Ky., 375 S.W.2d 817; Allen v. Commonwealth, Dept. of Highways, Ky., 425 S.W.2d 283. The reasoning behind the rule in those cases was that since the giving of notice and the assertion of a claim by an *employed workman,* for compensation for disability from an occupational disease probably would result in his employment's being terminated by the employer, despite the fact that he was physically able to continue working at least for a limited future time, the Act would be construed so as to permit the workman the chance to continue the employment he had when he first became aware or was chargeable with knowledge of the fact that he had the disease. The rationale of the rule was that until the termination of that employment the workman could not be considered to be *disabled.* The effect of the rule was to establish a *conclusive presumption* of non-disability, in occupational disease cases, so long as the workman continued in full-time employment by the same employer.

The key to the rule in the above case is *continuation* in employment, because there is no other basis on which to rest the presumption of nondisability. Once the employment ceases, the hook on which the presumption hangs is gone. The question of the workman's ability to compete for a job in the labor market then is put squarely in issue. The answer to that question should depend on *proof,* and not be predetermined by a presumption. (The fact that the workman may in fact obtain another job will merely be some evidence on the question of the extent of his disability. See Osborne v. Johnson, Ky., 432 S.W.2d 800.)[1]

We think that the employment during which the workman first knew or became chargeable with knowledge of his diseased

condition cannot be considered to have continued if there is any period of time, between the cessation of that employment and a bona fide renewal of the same type of employment, significant enough to classify the workman as having been in a state of unemployment. In that case the presumption of nondisability arising from *continuation* in employment cannot be invoked.

There is no way to reconcile Davis v. Harlan Everglow Coal Co., Ky., 392 S.W.2d 62, in which the workman was deemed to have continued in regular employment despite the fact that he was off work, due to the closing of the employer's mine, for some seven months, and then secured employment with a different employer. We consider that case to be an aberration, resulting from a misinterpretation of the Chitwood rule, and we now overrule it.

 It is our conclusion that since Karst entered into an obvious state of employment after he quit work for Karst-Robbins in 1971 he cannot be presumed then not to have been disabled. The existence of disability and the extent of it were matters of *proof.* The evidence that Karst was suffering from Grade–III silicosis in 1971 established that he had some disability at that time and the Workmen's Compensation Board was entitled to find from Karst's testimony (which in the posture of this case amounted to an admission against interest) that he was then totally disabled. Thus there is no basis on which he could claim (which he does not) that he was only partially disabled when he quit work in 1971, that he sustained additional disability by his two-week work episode in 1973, and that at least he is entitled to compensation for that portion of his disability attributable to the 1973 work episode.

1. At the time the rule of the Chitwood line of cases was developed, the prevailing concept was that *any* disability from silicosis and related diseases was *total* disability, so it was considered that once a workman admitted to having such a disease his employment opportunities were ended. Since that time we have recognized, in Osborne v.

Johnson, Ky., 432 S.W.2d 800, Princess Manufacturing Co. v. Jarrell, Ky., 465 S.W.2d 45, and Young v. Marsillett, Ky., 473 S.W.2d 128, that there can be a *partial* disability from silicosis and related diseases. That holding weakens the basis for the Chitwood rule, but does not destroy it.

Karst's attorneys further maintain that Karst did not have a claim in 1971 because, under KRS 342.316(1) as amended in 1972, the employer in whose employment the employee was *last exposed* to the hazards of silicosis is made liable, and the compensation payments are to begin from the date of last injurious exposure or from the date of disability, *whichever is later.* Whatever the amended statute does mean (and assuming for the purpose of argument that the 1972 amendment constitutionally could apply in Karst's situation), we are convinced that it does not mean that a workman who is disabled within the meaning of the compensation law, from silicosis, who knows the fact and cause of disability, and by reason of those facts *does have a claim*, which by failure of notice he does not perfect, can retrospectively, simply by virtue of further exposure, be considered not to have had a claim. The duty to prosecute a claim cannot rationally be deferred indefinitely while the workman contemplates whether he will attempt to get further exposure.

Throughout the history of our workmen's compensation law liability for compensation has rested on the creation of disability, and the amount of compensation has been governed by the statutes in force when the disability occurred. In this case and in others now before us a seemingly concerted effort is being made to persuade us that the entire basic philosophy of the compensation law was changed in 1972, so that liability now rests on exposure without any regard to its effect on disability, and the workman now, by deciding whether or not to seek additional exposure, can determine which statutes will control the amount of his benefits. We are not so persuaded; on the contrary, we view the argument as a distortion of the meaning and a perversion of the purpose of the 1972 amendments.

We do not question here the proposition that the employer in whose employment the last exposure *preceding disability* occurred may be subjected to a liability for compensation, but we do hold that as to any existing *disability* for which a claim could be asserted, a subsequent exposure cannot be the basis for liability.

There is no merit in Karst's argument that the defense of failure to give notice could not be invoked because it was not affirmatively pleaded. See Church v. Turner Elkhorn Coal Company, Ky., 492 S.W.2d 877.

The judgment is reversed with directions to enter judgment upholding the order of the Workmen's Compensation Board which dismissed the claim.

All concur.