**BETHENERGY MINES, INC.,**
Appellant,

v.

**James F. EASTERLING, Deceased; Myrtle M. Easterling, Widow and Administratrix; Carol Palmore, Secretary of Labor Cabinet; and Workers' Compensation Board of Kentucky, Appellees.**

**Larry D. BEALE, Director of Special Fund, Appellant,**

v.

**BETHENERGY MINES, INC.; James F. Easterling, Deceased; Myrtle M. Easterling, Widow; and Workers' Compensation Board of Kentucky, Appellees.**

**Janice BLAIR, Widow and Dependent of Gernade Blair, Deceased, Appellant,**

v.

**SOUTHEAST COAL COMPANY; Hon. John Calhoun Wells, Secretary of Labor Cabinet and Custodian of Special Fund; Special Fund; and Workers' Compensation Board of Kentucky, Appellees.**

Nos. 88–CA–560–S, 88–CA–719–S and 88–CA–1010–S.

Court of Appeals of Kentucky.

July 21, 1989.

As Modified Aug. 25 and Sept. 15, 1989.

Discretionary Review Denied
by Supreme Court
Oct. 11, 1989.

Bennett Clark, Stoll Kennon & Park, Lexington, for Bethenergy Mines.

Stephen W. Owens, Kelsey Friend Law Firm, Pikeville, for Easterlings and Blair.

James D. Asher, Whitesburg, for Southeast Coal Co.

Robert L. Whittaker, Labor Cabinet, Frankfort, Denis S. Kline, Labor Cabinet, Louisville, for Special Fund.

Before ELSWICK, HAYES and HOWARD, JJ.

HAYES, Judge.

Bethenergy Mines, Inc. [Bethenergy] and the Special Fund appeal from a judgment entered in Pike Circuit Court affirming an opinion and supplemental opinion of the Workers' Compensation Board. In a similar case, Janice Blair appeals from a judgment of the Letcher Circuit Court, affirming a decision of the board.

James F. Easterling was a 56–year–old employee of Bethenergy when he sustained a fatal heart attack on August 5, 1985. At the time of his death he was a belt cleaner and had just finished lunch. His widow filed a workers' compensation claim in October, based on the heart attack and on the existence of pneumoconiosis. In an opinion and award rendered September 21, 1987, the board rejected the heart attack claim, finding it to be unrelated to the work. The board did, however, award benefits to the widow and minor son, based on the deceased's life expectancy for total, permanent disability as a result of the pneumoconiosis. In a supplemental opinion and order rendered December 7, 1987, the board made additional findings, holding that the deceased did have an occupational disability in terms of loss of job opportunity, even though he continued to work up until the time of his death. The board elaborated that had the deceased voluntarily ceased employment with Bethenergy prior to his death and then sought employment with another coal company, he would likely have

been unsuccessful in obtaining employment because of the positive diagnosis of pneumoconiosis.

In a consolidated appeal to the Pike Circuit Court, the court adopted the findings of the board and dismissed the appeals of Bethenergy and the Special Fund. These appeals followed. The issue presented on appeal is whether the deceased's dependents are entitled to benefits when the deceased continued to work for the same employer up until the time of his death, which was not work related, and where the medical evidence demonstrated only an early stage of pneumoconiosis.

██ Reviewing courts are prohibited from reversing a decision of the board unless its ruling is clearly erroneous based on the record as a whole. KRS 342.285(3) provides that on review courts shall not substitute their judgment for that of the board as to the weight of the evidence on questions of fact. The general rule is that any finding of the board will not be set aside on appeal if. there is substantial evidence of probative value to support the award. *Holman Enterprise Tobacco Wrhse. v. Carter*, Ky., 536 S.W.2d 461 (1976). *Dealers Transport Co. v. Thompson*, Ky.App., 593 S.W.2d 84 (1979).

KRS 342.730(3) governs income benefits to the surviving spouse and minor children where the employee dies from a cause unrelated to his work:

(3) When an employe, who has sustained disability compensable under this section, and who has filed, or could have timely filed, a valid claim in his lifetime, dies from causes other than the injury before the expiration of the compensable period specified, the income benefits specified and unpaid at the individual's death, whether or not accrued or due at his death, shall be paid, under an award made before or after such death, for the period specified in this section, to and for the benefits of the persons within the classes at the time of death and in the proportions and upon the conditions specified in this section and in the order named:

(a) To the widow or widower, if there is no child under the age of eighteen (18) or incapable of self-support; or

(b) If there are both such a widow or widower and such a child or children, one-half to such widow or widower and the other half to such child or children;

The key word in this case is "disability." [1] If there was no disability there can be no claim for benefits.

██ It is well settled that the fact an employee continues to work does not affect entitlement to workers' compensation benefits. He still may be found to have an active, occupational disability.

The test is not whether the employe is working, but how much, if any, occupational disability, by the standards employed in determining allowance for workman's compensation benefits, the employe's condition evidenced immediately before he received the second injury. *Griffin v. Booth Memorial Hospital*, Ky., 467 S.W.2d 789, 790 (1971). *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968). However, these cases do not cover the situation where, as here, the employee continues to work in full employment for the same employer after the occupational disease manifests itself. Mrs. Easterling testified that her late husband, who had worked in coal mines for 38–40 years, had been experiencing shortness of breath for the previous two years.

In *Allen v. Commonwealth, Dept. of Highways*, Ky., 425 S.W.2d 283, 284 (1968), it was held that the word "disability" as it is used in the occupational disease statute, KRS 342.316, is construed to mean that an employee "cannot have a compensable claim for any period of time in which he has continued and continues to work full-

---

1. Disability was defined in KRS 342.620(11) as meaning a "decrease in wage earning capacity due to injury or loss of ability to compete to obtain the kind of work the employe is customarily able to do, in the area where he lives, taking into consideration his age, occupation, education, effect upon employe's general health of continuing in the kind of work he is customarily able to do, and impairment or disfigurement." The 1987 special session of the legislature renumbered this subsection as KRS 342.-0011(11).

time for the same employer." Similarly, in *Yocom v. Karst*, Ky., 528 S.W.2d 697, 700 (1975), the rule in *Allen* was explained as establishing a "conclusive presumption of nondisability, in occupational disease cases, so long as the workman continued in full-time employment by the same employer." See also *Bethlehem Mines Corp. v. Davis*, Ky., 368 S.W.2d 176 (1963); *Mary Helen Coal Corp. v. Chitwood*, Ky., 351 S.W.2d 167 (1961) and *Alva Coal Corp. v. Trosper*, Ky., 375 S.W.2d 406 (1964). *Yocom* also holds that the key to the *Allen* case is "continuation" in employment, and once employment ceases, the hook on which the presumption hangs is gone. It is only *then* that the question of his ability to compete in the labor force is put in issue.

It is interesting to note that the board based its decision solely on the existence of the disease and its opinion that the deceased, had he quit his employment prior to his death, would have had difficulty obtaining employment with another coal company. Not only was his employability irrelevant because of *Yocom, supra,* there was no testimony of his ability to compete in the labor market. The board merely assumed that this would be the case, thereby finding him 100% totally disabled.

Mrs. Easterling argues that *American Radiator & Standard Sanitary Corp. v. Gerth*, Ky., 375 S.W.2d 817 (1964) entitles her to benefits. In that case, the employee had contracted silicosis but continued in full employment up until the time of his heart attack at work. Benefits were permitted to the widow. However, the heart attack in that case was found to have arisen out of and in the course of his employment. In addition, it was also found that the heart attack was an outgrowth of and resulted from the silicosis. In the case before us, the heart attack was not found to be related to the employment, or to the occupational disease.

Mrs. Easterling also relies on Larson, *Workers' Compensation Law* § 78.62 (1989), for the rule that the failure of the employee to make a claim for disability prior to his death, thereby giving notice to his employer, does not bar the surviving spouse and child from making a claim after this death. We agree with this statement. However, the cases which deal with this rule cover the situation where the cause of death was the occupational injury or disease, and the employee's claim for disability, had he lived, would have been barred by the applicable limitations period. Those cases hold that in that situation the dependents may still file a claim for death benefits as their right is independent from the deceased's.

The facts in the case before us are markedly different. We are not dealing with KRS 342.750, which governs income benefits for death caused by the work-related injury or disease; the applicable statute is KRS 342.730, governing situations where the employee sustained a disability within the meaning of the statute and could have timely filed a claim before he died from causes other than the occupational injury or disease. Even under this statute, there can still be no claim for disability by *anyone* unless there is, in fact, a disability. Moreover, Mrs. Easterling's authority, *American Radiator, supra,* at 818–819, recognizes the foregoing principles and refers to *Mary Helen Coal Corp., Bethlehem Mines Corp., supra,* and *Stephens Elkhorn Coal Co. v. Tibbs*, Ky., 374 S.W.2d 504 (1964) in making the following conclusion:

> The net effect of our decisions on this subject is that so long as a person who has contracted an occupational disease remains in the full-time service of the same employer he does not have a disability and therefore does not have a claim. His disability occurs and his claim arises when his full-time employment ends. Gerth's full-time employment was terminated by his death. *Before that time he had no claim* against which limitations could run. (Emphasis ours.)

In *Silvers v. Marley Company*, Ky.App., 566 S.W.2d 767 (1978), the employee filed a claim for benefits prior to his death, which was not work-related. A determination of his claim had not yet been made. It was later determined that the employee was 100% occupationally disabled. This Court

held that the widow was not entitled to a continuation of permanent disability benefits based on his life expectancy, but was only entitled to compensation for the time during which her husband was disabled. The disability ended with his death, and so did the benefits.

In the other case, Gernade Blair was employed as a coal miner for Southeast Coal Company when, while at home, he was stung by a bee. An immediate allergic reaction resulted in his death. Almost two years later Janice Blair sought death benefits based on Gernade having had pneumoconiosis. Gernade, however, had never been treated by a physician for any lung problems. The board denied her claim, and the Letcher Circuit Court affirmed.

■ We find this case to be governed by the principles set out in the preceding case. KRS 342.730(3) contains the key phrase. It grants benefits where the deceased employee "has filed or could have timely filed a valid claim in his lifetime . . .". In this case he could not have filed a timely claim, simply because he continued to work. Had he ceased work for even one day, then, and only then, could he have requested benefits. It follows, then that his widow could have. To hold otherwise would effectively transform workers' compensation benefits into life insurance. Such was not the intent of the legislature.

Accordingly, as there was no disability in either of these situations, the *Easterling* case is reversed and remanded to the Pike Circuit Court with directions to reverse the decision of the Workers' Compensation Board rendered September 21, 1987 and December 7, 1987, consistent with this opinion. In addition, the decision of the Letcher Circuit Court in the *Blair* case is affirmed.

HOWARD, J., concurs.

ELSWICK, J., dissents.

ELSWICK, Judge, dissenting:

Respectfully, I dissent. I cannot agree that, as a matter of law, the fact that a worker continued in employment until the time of his death precludes an award to beneficiaries pursuant to KRS 342.730(3).

The conclusive presumption upon which today's decisions appear to rest is a judicial creation intended, developed, and applied—till now—to relieve claimants from the literal notice and limitations strictures of KRS 342.316(2) and (3), respectively, and their predecessors.[2] Beginning with the decision in *Mary Helen Coal Corporation v. Chitwood*, Ky., 351 S.W.2d 167 (1961), our courts have evolved a construction of these statutes which establishes that the timeliness of notice and claim is to be determined with respect to the date of cessation of employment as the threshold event. The policy sought to be advanced by this construction was explained in *Yocom v. Karst*, Ky., 528 S.W.2d 697 (1975):

> The reasoning behind the rule ... was that since the giving of notice and the assertion of a claim by an *employed workman*, for compensation for disability from an occupational disease probably would result in his employment's being terminated by the employer, despite the fact that he was physically able to continue working at least for a limited future time, the Act would be construed so as to permit the workman the chance to continue the employment he had when he first became aware or was chargeable with knowledge of the fact that he had the disease. The rationale of the rule was that until the termination of that employment the workman could not be considered to be *disabled*. The effect of the rule was to establish a *conclusive presumption* of non-disability, in occupational disease cases, so long as the workman continued in full-time employment by the same employer.

*Id.*, at 700.

With a single exception, which I will address, the line of cases developing and ap-

**2.** E.g., "... notice of claim shall be given to the employer as soon as practicable after the employe first experiences a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he has contracted such disease, or a diagnosis of such disease is first communicated to him, whichever shall first occur." KRS 342.-316(2)(a).

plying this rule all involved the issue of timeliness of notice or claim, and all recognized, in keeping with the policy of its genesis, that the presumption is claim-benevolent. See *Mary Helen Coal Corp. v. Chitwood, supra; Bethlehem Mines Corp. v. Davis,* Ky., 368 S.W.2d 176 (1963); *Stephens Elkhorn Coal Co. v. Tibbs,* Ky., 374 S.W.2d 504 (1964); *Alva Coal Corp. v. Trosper,* Ky., 375 S.W.2d 406 (1964); *American Radiator & Standard Sanitary Corp. v. Gerth,* Ky., 375 S.W.2d 817 (1964); *Yocom v. Karst, supra; Caldwell v. Yocom,* Ky.App., 574 S.W.2d 913 (1978).[3]

Only in *Allen v. Commonwealth, Dept. of Highways,* Ky., 425 S.W.2d 283 (1968), has the presumption been invoked to defeat a claim. There, the claimant, although clearly suffering from an occupational disease, continued working full-time, exposed to the same hazard, throughout the pendency of his claim. In this unique circumstance, it was held that Allen had no compensable claim so long as he continued such employment. Apart from the distinctive facts of that case, we note and deem it relevant that at the time of *Allen* occupational disease disability was total or none, whereas we have since come to recognize that such disease may result in *partial* disability.[4] Moreover, the view at the time was that "... the ultimate object of workmen's compensation ... is to offset loss of earnings" (*id.,* at 284), whereas our present aim is to compensate for loss of earning *capacity,* considering, *inter alia,* loss of ability to compete, and effect upon an employee's health of continuing in his usual work. KRS 342.620(11). The same result would obtain in *Allen,* on its facts, under present law; but the result would derive from statute,[5] and would not require that a claimant be hoist with his own petard.

I do not perceive the necessity of applying the presumption outside its context. Nor do I perceive that, given such application, today's results necessarily follow.

Our cases and statutes contemplate that an actual disability, while perhaps not compensable during continued employment, *becomes* compensable when employment ceases for whatever reason. The questions of disability, its cause, and its degree all become *issues of fact.* KRS 342.316(1)(b) (see footnote 3, *supra*) and 342.316(4) plainly consider that an actual disability may exist while exposure (and employment) continues, becoming compensable disability when exposure ends.

In *Beth–Elkhorn Corp. v. Dotson,* Ky., 428 S.W.2d 32 (1968), where the claimant worked until suffering a non-work-related, non-fatal, but totally disabling heart attack, and evidence showed that he also had pneumoconiosis so advanced as to be totally disabling itself, it was held that the Board was warranted in finding that Dotson sustained total compensable disability from silicosis on the day that he ceased working due to the non-compensable heart attack. I am not disposed to conclude, as do the decisions today, that, under present law, had Dotson's heart attack been instantly fatal, his survivors would have been entitled to no benefits.

Nor do I read anything in the decision in *Allen* to say that the claimant there, or his beneficiaries, would not have had a compensable claim if he had ceased employment—if, for example, he had died.

We may return to *Yocom v. Karst:*

The key to the rule is *continuation* in employment, because there is no other basis on which to rest the presumption of nondisability. Once the employment ceases, the hook on which the presump-

---

3. In every case but one, the claimant prevailed due to the presumption; in *Yocom v. Karst,* the claimant failed because he had *lost* benefit of the presumption.

4. See *Round Mountain Coal Co. v. Tackett,* Ky., 433 S.W.2d 128 (1968), at 130; *Yocom v. Karst, supra,* fn 1, at 700; and KRS 342.316(4): "The amount of compensation payable for disability due to occupational disease ... and the time and manner of its payment, shall be as provided

for under the general provisions of the workers' compensation act ...;" and KRS 342.620(11), defining disability.

5. "The time of the beginning of compensation payments shall be the date of the employe's last injurious exposure to the cause of the disease, or the date of actual disability, whichever is later." KRS 342.316(1)(b).

tion hangs is gone. The question of the workman's ability to compete for a job in the labor market is put squarely in issue. The answer to that question should depend on *proof*, and not be predetermined by a presumption.

528 S.W.2d, at 700. (Emphasis in original.)

I do not contend that the facts in the present cases compel a finding that Blair and/or Easterling sustained compensable disability when they died. But I do contest the proposition that as a matter of law they did *not*, and that holding otherwise would transform the Workers' Compensation Act into a life insurance policy. In my view, the Act intends that the question of disability under KRS 342.620(11) is in each of these cases an issue of fact, to be decided on the evidence by the finder-of-fact, to whose expertise we accord due deference.

The statute under which these claims arose, KRS 342.730(3), requires that the deceased employee could have filed a valid claim in his lifetime. The decisions today conclude that the subject employee "could not have filed a timely claim, simply because he continued to work." But continuing to work, or not, was a factor entirely within the control of the employee (so long as employment was available); that he elected to continue to work does not at all imply that he could not have quit. We would not hold, I believe, that an individual who had stopped working, and was otherwise qualified under the statute, but failed to acquire a claim form before his death, could not have timely filed a claim because he had no form. The rationale that if the employee had left his employment one day prior to his death then his beneficiaries could have brought their claim, whereas here they may not, is unconvincing. The significant point is that the employee *could have* chosen to end his employment at any time.

I find the phrase "valid claim" more troublesome than "could have timely filed." If the validity of a claim, in this context, is determined under the criteria of KRS 342.-316(2)(b), we are faced with the question of whether Easterling could have secured written medical reports supporting his putative claim, as the only medical evidence of pneumoconiosis in this case was postmortem.[6] Saying that he could have secured such reports requires an extrapolation from autopsy evidence and the testimony as to the symptoms exhibited during his life. I find nothing amiss in the assumption, from the facts that he had the disease and its symptoms, that the condition was diagnosable. This inference would appear to be necessary in any event to give effect to KRS 342.730(3) and to assure the rights of beneficiaries in the general case where a victim of occupational disease failed to seek medical advice, to acquire x-rays (and, nowadays, spirometric tests), or to file a claim during his lifetime.

Finally, these decisions indicate, on the authority of *Silvers v. Marley Co.*, Ky. App., 566 S.W.2d 767 (1978), that the award in *Easterling*, based on a finding of total disability, amounts to nothing, as the disability ended with the employee's death—at the same time, in this case, that it began—and that benefits could not be paid over the employee's normal life expectancy. I believe the controlling authority, however, to be *Amburgey v. Daniel Construction Co.*, Ky., 592 S.W.2d 141 (1979), which decision, reviewing similar circumstances, reached the opposite result.

For the foregoing reasons, I would affirm the award in *Easterling*. In *Blair*, where the Board found no disability as a matter of law, without recourse to all the facts, I would reverse and remand for a finding as to the extent of disability, if any, based upon the evidence.

---

6. In *Blair*, the medical reports supporting the widow's claim were based on an old x-ray; obviously Blair himself, during his lifetime, could have obtained and submitted the same reports.