Vicki G. NEWBERG, Acting Director
of Special Fund, Appellant,

v.

Matt G. SLONE, Enduro Coal Company,
and Workers' Compensation Board,
Appellees.

ENDURO COAL COMPANY, Appellant,

v.

Matt Greenie SLONE; Ottis Reed, Jr.,
Secretary of Labor Cabinet—Special
Fund; and Workers' Compensation
Board, Appellees.

Nos. 91–SC–892–WC, 91–SC–895–WC.

Supreme Court of Kentucky.

Dec. 17, 1992.

Rehearing Denied March 18, 1993.

Peter J. Naake, John E. Stephenson, Labor Cabinet—Special Fund, Louisville, for Labor Cabinet—Special Fund.

A. Stuart Bennett, Jackson & Kelly, Lexington, for Enduro Coal Co.

Herbert Deskins, Jr., Deskins and Pafunda, Pikeville, for Matt G. Slone.

## OPINION OF THE COURT

In this workers' compensation case, the Administrative Law Judge (ALJ) dismissed a claim filed by Matt Slone on the grounds that claimant failed to notify his employer, Enduro Coal Company (Enduro), of his occupational disease as soon as practicable pursuant to KRS 342.316(2)(a). The Workers' Compensation Board (Board) upheld the decision by the ALJ to dismiss the claim. The Court of Appeals reversed the decision of the Board, and the employer and the Special Fund have appealed to this Court as a matter of right.

KRS 342.316(2)(a) provides in pertinent part:

> ... notice of claim shall be given to the employer as soon as practicable after the employee first experiences a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he has contracted such disease, or a diagnosis of such disease is first communicated to him, whichever shall first occur.

In this Court's order setting this case for oral argument we specified that the parties were to address: (a) the legal basis of the Court of Appeals' decision construing KRS 342.316(2), and (b) the issue of whether delay in giving notice is fatal to a claim absent a showing of prejudice to the employer. Regarding the second issue, we are satisfied that the authority relied upon in oral argument accurately reflects the law on this point. *Special Fund v. Francis*, Ky., 708 S.W.2d 641 (1986); *Blue Diamond Coal Co. v. Stepp*, Ky., 445 S.W.2d 866 (1969); Larson's, *Workers' Compensation Law*, 78.32(a).

Our concern with the lower court's construction of KRS 342.316(2) is that the decision seems to totally ignore the language of the statute and the factual circumstances surrounding the cases relied upon. In essence, the decision below requires a finding of actual incapacity to perform work before an employer can prevail under the defense of untimely notice. It was unclear who carried this burden of proof (clearly the employer should not be saddled with the burden so that in the process of proving his defense he also proves the claimant's case, yet if it is the claimant's burden, he or she may simply deny disability until the date of notice), and under the current system a worker may in some cases be entitled to compensation even though he is still able to work. We do not believe that that should automatically relieve the worker from the statutory notice requirements. What we are convinced of is that the notice provision of KRS 342.316(2)(a) is clear and requires notice to an employer when the worker has knowledge of a potentially compensable condition. However, a delay in giving notice may be excused if the worker is able to demonstrate reasonable cause for the delay.

The ALJ's determination that claimant had not timely given notice to his employer was based upon the following facts. On August 23, 1986, Enduro shut down its mining operation in order to relocate, and claimant was laid off. He signed up for unemployment benefits which he collected through March, 1987.

Shortly after claimant's layoff, he saw counsel in regard to filing a black lung claim. Counsel arranged an examination by Dr. L. Wright. Using X-rays which had been made on May 21, 1986, Dr. Wright diagnosed claimant on October 9, 1986, as having contracted category 1 pneumoconiosis. Dr. Wright concluded that claimant is totally and permanently disabled to work in the coal mining industry.

On April 1, 1987, following the payout of unemployment benefits and almost six months after Dr. Wright made his diagnosis, claimant notified Enduro that he had been advised by a physician that he was

suffering from an occupational, pulmonary disease and intended to file a workers' compensation claim, which he did on May 20, 1987.

The ALJ noted several discrepancies in the record created by the various versions of events given by claimant to the several testifying physicians regarding why he stopped working. One version was that he stopped working when the mines shut down. Another version was that he quit working because of breathing difficulties. Yet another version was that he quit working because of severe back pain. At the hearing, claimant first stated that he stopped work in August of 1986 because he could not breathe and that he had had chest problems for about a year before he stopped work. Claimant said he told his foreman about the October, 1986, diagnosis by Dr. Wright. Claimant testified again later that he quit, was not laid off, drew unemployment from August to March, and did not tell Enduro he could not work until April, 1987, when he found out.

After reviewing KRS 342.316(2)(a), KRS 342.200, *Harlan Fuel Co. v. Burkhart*, Ky., 296 S.W.2d 722 (1956), and *Caldwell v. Yocom*, Ky.App., 574 S.W.2d 913 (1979), the ALJ concluded that there is no duty to give notice until the employee is in fact disabled, and that as long as he works, the employee is not disabled. The ALJ stated that the claimant's duty to notify the employer could have arisen either on the date he last worked for the employer, if in fact he quit because he could not work, or on the date he was informed of his disability, which the ALJ found to be a day or so after Dr. Wright's letter of October 9, 1986.

Even accepting a mid-October date, the ALJ found that the five and one-half month delay between the date of diagnosis and notice to the employer was not as soon as practicable as required by KRS 342.316(2). The ALJ reasoned that,

It is clear that the plaintiff did not give notice when the pneumoconiosis was diagnosed because he wanted to collect unemployment benefits and *then* collect Workers' Compensation benefits. This is not reasonable cause [for delay in giving notice]. In addition the defendant-employer had been misled to his injury, since the employer is the one who ultimately pays unemployment benefits, see KRS Ch. 341. If the plaintiff had informed the employer of the disability diagnosed in October, or if he had indeed quit because he was disabled, he could not have collected unemployment benefits. He would have been limited to his Workers' Compensation remedy, and the employer would not have been injured by paying the unemployment.

Under these circumstances, six months or five and a half months is too long to wait to file notice.

The Board affirmed this finding by the ALJ and noted that the claimant has the burden of proving that he gave timely notice to his employer, *Special Fund v. Francis*, Ky., 708 S.W.2d 641 (1986), and that notice must be given within a reasonable time under the circumstances of the particular case. *Harlan Fuel Company v. Burkhart*, Ky., 296 S.W.2d 722 (1956); *Tunstall v. Blue Diamond Coal Company*, Ky., 359 S.W.2d 614 (1962).

The Court of Appeals reversed the decision of the Board and remanded the claim to the ALJ for consideration on the merits. The court reasoned that "this matter was decided upon erroneous application of law. The notice provision of KRS 342.316(2) has consistently been interpreted to mean notice of actual incapacity to perform work, rather than notice of contraction or diagnosis. *See, Tunstall v. Blue Diamond Coal Company*, Ky., 359 S.W.2d 614 (1962)." The court went on to state that under the circumstances of this case, "where Slone unquestionably became unemployed in the first instance by mine closure, we do not deem the diagnosis of pneumoconiosis by Dr. Wright as triggering the notice statute." In other words, without a finding of actual incapacity to work, claimant's notice obligation never arose, even though he knew he suffered from an occupational disease. We disagree.

It appears that the Court of Appeals' interpretation of *Tunstall, Id.*, is much too narrow. While it is accurate that decisions based upon the occupational disease notice

provision do speak in terms of actual incapacity to perform work, included within those decisions is the issue of whether the worker knew of his diseased condition or should have with reasonable diligence known of his condition. Otherwise, the notice provisions of KRS 342.316(2)(a) are ignored. The rule which evolved from *Mary Helen Coal Corp. v. Chitwood*, Ky., 351 S.W.2d 167 (1961), is that notice is not required until two conditions occur: (1) the employee has a disability from an occupational disease which impairs his capacity to work, and (2) the employee knows or should know by the exercise of reasonable care and diligence that he is suffering from the disease. However, a review of the cases relied upon by claimant do not support the conclusion reached by the Court of Appeals below. In those cases, the disability component has been invoked to reach a fair result where the employee is still working.

In *Yocom v. Karst*, Ky.App., 528 S.W.2d 697 (1975), the court explained that the reasoning behind the rule in *Chitwood* and its progeny was that since the giving of notice and the assertion of a claim by an employed workman would probably result in the termination of his employment, despite the fact that he was physically able to continue working for at least a limited time,

> the Act would be construed so as to permit the workman the chance to continue the employment.... The rationale of the rule was that until the termination of that employment, the workman could not be considered to be disabled. The effect of the rule was to establish a conclusive presumption of nondisability, in occupational disease cases, so long as the workman continued in full-time employment by the same employer.... Once the employment ceases, the hook on which the presumption hangs is gone.

*Karst*, 528 S.W.2d at 700.

 While the need to protect employees in this manner from unfair firing practices may no longer be as great,[1] we are not faced with a case where the employee is still working. Although we would not disturb the presumption of nondisability if the employee continues working for the same employer, once there is a cessation of employment the presumption disappears and "the question becomes whether circumstances exist from which the workman realizes or reasonably should realize that his capacity to work is impaired by reason of the disease." *Caldwell v. Yocom*, Ky. App., 574 S.W.2d 913, 915 (1979), citing *Blue Diamond Coal Co. v. Stepp*, Ky., 445 S.W.2d 866 (1969). We agree with the ALJ that a diagnosis of coal miners' pneumoconiosis is such a circumstance absent some other showing of reasonable cause for the delay.

The *Chitwood* rule quoted above developed from cases decided under the pre–1962 version of the notice statute. *E.g.* *Harlan Fuel Co. v. Burkhart*, Ky., 296 S.W.2d 722 (1956); *Mary Helen Coal Corp. v. Chitwood*, Ky., 351 S.W.2d 167 (1961); and *Tunstall v. Blue Diamond Coal Co.*, Ky., 359 S.W.2d 614 (1962). Those cases addressed notice of actual disability because the statute, at that time, spoke in terms of notice of "disability," where today it provides for notice of a "claim." Furthermore, at the time the rule of the *Chitwood* line of cases was developed, the "prevailing concept was that *any* disability from silicosis and related diseases was *total* disability, so it was considered that once a worker admitted to having such a disease his employment opportunities were ended. Since that time we have recognized in *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968) ... that there can be a *partial* disability from silicosis and related diseases. That holding weakens the basis for the Chitwood rule, but does not destroy it." *Yocom v. Karst*, Ky.App., 528 S.W.2d 697 (1975) footnote at 700.

The *Osborne* decision clarified that "disability" for workers' compensation purposes means occupational disability as distinguished from functional or mere bodily impairment. In 1972, disability was statutorily defined as a decrease in wage earn-

---

1. Consider, for example, KRS 342.197, the antidiscrimination provision, or the newly enacted Americans with Disabilities Act 42 U.S.C. 12101 *et seq.*

ing capacity due to injury or loss of ability to compete considering certain factors. KRS 342.0011(11). Therefore, decisions which equate occupational disability with a physical incapacity to perform work are not necessarily accurate authority today. E.g., *Blue Diamond Coal v. Stepp* Ky., 445 S.W.2d 866 (1969).

There have been other developments in workers' compensation law that also weaken the notion that an employee's obligation to notify his employer of a claim is triggered only by an actual incapacity to perform work rather than by the circumstances contained in KRS 342.316(2). Consider, for example, the statutory enactments governing occupational pneumoconiosis claims. In those cases, occupational disability is determined based upon certain medical data and not necessarily upon a worker's actual incapacity to work. In KRS 342.732(1)(b) through (d) a worker is presumed by law to be occupationally disabled. Under KRS 342.732(1)(a) a worker is entitled to retraining incentive benefits when there is no respiratory impairment and the award may be collected while the employee continues to work in the mining industry. In other words, a RIB award is not based upon an incapacity to perform work, and yet why should the employee be excused from his notice obligations when he is aware of his compensable condition. Therefore, the idea that the notice requirement of KRS 342.316(2) is "notice of disability rather than notice of the contraction of such a disease," *Inland Steel Co. v. Mosby*, Ky., 355 S.W.2d 651 (1962), may be a difference without distinction.

In any event, a review of those early cases reveals that in determining whether the notice had been given timely, in conformity with the statute the Court considered whether notice had been given as soon as practicable, and this included consideration of claimant's realization that he had contracted an occupational disease. The ultimate goal is to reach a balance considering the purposes of the notice requirement and the inequity of requiring an employee to notify of a claim before he is aware of his condition.

In *Burkhart, supra,* the Court upheld the Board's finding that the worker had timely notified his employer of his disability. The court stated that KRS 342.200 applied to silicosis cases so that delay in giving notice is not fatal to the claim if the employer had knowledge or if delay was due to mistake or other reasonable cause.

The *Burkhart* Court noted that the reasons underlying the requirement of prompt notice are threefold: (1) to give the employer the opportunity to place the worker under the care of a physician in order to minimize disability, (2) to enable the employer to investigate the facts at the earliest time, and (3) to prevent the filing of fictitious claims when lapse of time makes proof of lack of genuineness difficult.

In *Chitwood,* the Court concluded that "[i]n view of the fact that the notice requirement of KRS 342.316(2) is 'notice of disability,' it necessarily follows that no notice need be given until the employee has a disability from an occupational disease." *Chitwood,* 351 S.W.2d at 168. It appears that from these cases evolved the idea that if an employee continued to work he was not actually disabled and therefore his "nondisability" was, in some cases, treated as a reasonable cause for delay in giving notice.

Finally, in *Tunstall, supra,* relied upon by the Court of Appeals and also decided under the pre–1962 version of KRS 342.-316(2), the Court upheld the Board's finding that the worker had not timely notified his employer of his disability. The worker first experienced symptoms of a disease in February, 1955 and was hospitalized three months later. His employment was terminated on March 29, 1957, and he was diagnosed in June, 1957, of suffering from contact dermatitis. He gave notice to his employer on November 11, 1957, four months after the diagnosis. The Board concluded that certainly in June, 1957, when he was diagnosed, he knew of his condition and did not give notice as soon as practicable within the meaning of the Act.

The *Tunstall* Court quoted the language from *Chitwood* that an employee must be disabled before notice is required, and ruled that when an employee's job is terminated, and he is later diagnosed with an

occupational disease, his obligation arises to notify his employer of his diseased condition. Therefore, the facts involved in *Tunstall* mirror those involved herein and support the action by the ALJ. In fact, *Tunstall* is cited in Larson's *Workmen's Compensation Law*, § 78.41(f), pp. 15–261, 262, for the proposition that "[a] medical diagnosis may be held to start the statute running even if it is not as precise or accurate as it should be, provided the diagnosis shows the condition to be work-related." *See also, LeWallen v. Peabody Coal Co.*, Ky., 306 S.W.2d 262 (1957); *Deal v. U.S. Steel Corp.*, Ky., 296 S.W.2d 724 (1956); *Inland Steel Co. v. Mosby*, Ky., 355 S.W.2d 651 (1962). This is still true, we believe, because a diagnosis is, in some cases, the means by which an employee first discovers that he may have an occupational disability which is now defined as a decrease in wage earning capacity. KRS 342.0011(11).

In 1962, KRS 342.316(2) was amended so that notice of a "claim" was required as soon as practicable rather than notice of disability. In *Stephens Elkhorn Coal Co. v. Tibbs*, Ky., 374 S.W.2d 504 (1963), the Court held that so long as the employee, after first acquiring knowledge that he has the disease, continues in full-time employment by the same employer, he cannot be considered to be disabled within the meaning of the notice statute. Although the case was decided under the pre-amended version of the statute, Judge Montgomery argued in his dissenting opinion that the provisions for filing a claim and giving notice had been ignored and that the 1962 General Assembly had obviously attempted to remedy the situation by substituting "notice of a claim" for "notice of disability." We are unaware, however, of any later cases which specifically considered the effect of the amendment.

Claimant has argued before this Court that "notice of claim" should mean that until claimant has two medical reports supporting his claim, one of the procedural steps contained in KRS 342.316(2)(b)1.a. for filing an application for claim, no notice is required. However, notice requirements involve separate and distinct purposes from the filing procedures found in KRS 342.316(2)(b)1.a.

Under most acts, there are two distinct limitations periods that must be observed: The period for notice of injury, and the period for claiming compensation.

Notice of injury—the first step in compensation procedure—is normally given to the employer. The period is comparatively short; it may be 'forthwith,' or 'as soon as practicable,' or a specified period of a few weeks or months. The purpose is dual: First to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury.

The compensation claim itself, however, is normally filed with the administrative agency. The period is usually one or two years. The purpose is the same as that of any limitations statute: to protect the employer against claims too old to be successfully investigated and defended. (citations omitted) *Larson's*, § 78.10.

In Kentucky, while there is no specific time frame for satisfying the notice requirement in injury or occupational disease cases, we believe the discretion for making the determination of whether it was given "as soon as practicable" lies properly with the ALJ. KRS 342.187, KRS 342.316(2). On the other hand, there are specific time limitations for filing an application for claim with the Board, i.e., three years for an occupational disease claim, KRS 342.316(3)(a), and two years in the case of an injury, KRS 342.185. Furthermore, KRS 342.316(2)(b)1.a. provides that the application in occupational disease claims is to contain a complete work history of the applicant with a concise description of injurious exposure to a specific occupational disease, together with the name and address of the employer, the dates of employment, two written medical reports supporting the claim, X-ray examinations, and spirometric or pulmonary function tests.

There is no support for, nor reason justifying, claimant's assertion that any of

these procedural steps which relate solely to filing the application, are to be met before notice is required to be given to the employer. If a worker was not required to give notice until the procedural steps for filing an application were completed, for which there is a three-year time frame, the purposes behind the prompt notice requirement may not be fulfilled. There are no strict procedural guidelines for giving notice, and although KRS 342.190 specifies that notice is to be in writing, any verbal information communicated to the employer is sufficient where it brings knowledge to him of the work-related injury or condition. KRS 342.200; *Carr v. Wheeler*, Ky., 265 S.W.2d 490 (1954). Whether the employee's claim has progressed to the point that he is prepared to file an application in no way affects the notice requirement of KRS 342.316(2).

If there is a delay in giving notice, the burden is on the claimant to show that it was not practicable to give notice sooner. *T.W. Samuels Distillery Co. v. Houck*, 296 Ky. 323, 176 S.W.2d 890 (1944); *Buckles v. Kroger Grocery & Baking Co.*, 280 Ky. 644, 134 S.W.2d 221 (1939). The requirement does not demand the impossible of the employee, and lateness of notice may be excused for various reasons. Professor Larson noted several widely accepted excuses, many of which have been recognized in Kentucky, including "... impossibility of knowing that an apparently minor accident would later develop into a compensable injury; reasonable inability to recognize a disease or disabling condition in an early or latent stage; medical opinion that the injury is not serious or is nonindustrial; voluntary payment of benefits by the employer, or assurances that the employee will be taken care of, inducing the employee to refrain from making claim; and disability preventing the making of the claim, due to mental or physical incapacity, minority, and the like." *Larson's* § 78.00.

In the case at bar, claimant had the opportunity to present evidence to show that the six-month delay in giving notice was justified by reasonable cause and that it was not practicable to provide notice sooner. He failed to do so. Instead, the ALJ found that based upon the evidence the claimant was informed of his potentially compensable condition in October of 1986, that the only cause for the delay in giving notice was claimant's desire to collect unemployment benefits, and that this did not constitute reasonable cause for the delay. The Court of Appeals seemed to disregard this finding by stating in a footnote that the matter of claimant drawing unemployment benefits is irrelevant, citing *Wells v. Jones*, Ky.App., 662 S.W.2d 849 (1984). That case stands for the proposition that the collection of unemployment benefits does not preclude a claimant from being totally disabled for workers' compensation purposes, and that unemployment benefits may not be offset against a worker's compensation award. The holding in *Wells* bears no relevance in the case at bar which involves whether there was reasonable cause for claimant's delay in giving notice. The ALJ found the matter of claimant's unemployment benefits relevant only to the extent that he believed they were the only cause behind claimant's delay in giving notice to his employer, that that does not constitute reasonable cause for the delay, and therefore claimant's failure to give notice as soon as practicable was fatal to his claim.

The decision of the Court of Appeals is reversed, and the order of the Administrative Law Judge dismissing the claim is reinstated.

STEPHENS, C.J., and REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

COMBS, J., files a separate dissenting opinion.

LEIBSON, J., dissents by separate opinion in which LAMBERT, J., joins.

COMBS, Justice.

The ALJ's ruling that the claimant did not have reasonable cause for the delay in providing notice of claim was based upon clearly erroneous findings of fact and erroneous conclusions of law. Both of these errors appear in the following paragraphs from the ALJ's Opinion and Order:

It is clear that the plaintiff did not give notice when the pneumoconiosis was diagnosed because he wanted to collect unemployment benefits and *then* collect Workers' Compensation benefits. This is not reasonable cause. In addition, the defendant-employer has been misled to his injury, since the employer is the one who ultimately pays unemployment benefits, see KRS Ch. 341. If the plaintiff had informed the employer of the disability diagnosed in October, or if he had indeed quit because he was disabled, he could not have collected unemployment benefits. He would have been limited to his Workers' Compensation remedy, and the employer would not have been injured by paying the unemployment.

Under these circumstances, six months or five and a half months is too long to wait to file notice.

Each of these circumstances relied on by the ALJ was either false, irrelevant, or both. According to the decision in *Wells v. Jones*, Ky.App., 662 S.W.2d 849 (1984), with which our majority expressly agrees, an earlier notice of claim would not have precluded Slone from receiving unemployment benefits.[1] It follows that any injury to the employer in this context is purely speculative. More importantly, it follows that concern for unemployment benefits did *not* cause the delay in giving notice of claim. There is no evidence in the record to support the ALJ's clearly erroneous finding that Slone did not give notice because he wanted to collect both unemployment benefits and Workers' Compensation benefits.

On the other hand, certain other findings of fact, supported by the evidence, indicate the real reason for Slone's delay in giving notice. The ALJ found:

On August 23, 1986, the Enduro Coal Company shut down its operation in order to move it to a different location. The plaintiff was laid off, along with most other employees. He signed up for unemployment benefits and collected these through March of 1987. He represented himself as being able to work in order to collect unemployment benefits and apparently did the required job hunting while he was collecting benefits.

It is compellingly clear, then, that: 1) Slone was *laid off,* and did not quit because unable to work; 2) the layoff was expected to be temporary, until such time as the company began operations at its new location; 3) Slone represented that he was physically and mentally able to work and available for suitable work, and indeed sought other employment. The logical conclusion is that Slone did not give notice of claim because he reasonably expected *to* return to full-time employment with Enduro, and to continue to work for as long as he was able. In view of *Mary Helen Coal Corp. v. Chitwood*, Ky., 351 S.W.2d 167 (1961) and *Yocom v. Karst*, Ky.App., 528 S.W.2d 697 (1975), these circumstances demonstrate a reasonable cause for delay. These circumstances were ignored by the ALJ, whose decision was based upon other, speculative, irrelevant circumstances, supported neither by the evidence nor by law.

I would affirm the result reached by the Court of Appeals.

LEIBSON, Justice, dissenting.

Respectfully, I dissent. I write separately because I differ from Justice Combs in expressing my reasons for dissent.

The Majority Opinion confuses "notice of claim," the term used in KRS 342.316(2)(a), with "notice of injury," the term used in Larson's treatise in discussing his view that "notice of injury" must be given to the employer as soon as practicable even though the time limitation on filing a claim may be much longer.

Our Kentucky statute uses the term "claim" rather than the term "injury." KRS 342.316(2)(a). But, under KRS 342.-316(2)(b)1., no right to make a "claim" exists in an occupational disease case such as the present one until the claimant has obtained two medical reports "supporting his claim" for filing with his application. Thus Appellee Slone *had no claim* until he had

---

**1.** Moreover, even had Slone "quit because he was disabled," which in fact he did not, and even if it were to be determined that he was totally disabled for purposes of Workers' Compensation, he still could have been eligible for unemployment benefits. *Wells, supra.*

obtained a second medical report supporting his claim, and the Majority Opinion compelling him to give notice of his claim before he had one is a contradiction in terms.

While I might agree with the Majority Opinion if statutory requirements were worded differently, the statutory language selected by the General Assembly controls when a claim exists, and the Majority Opinion here compels "notice of claim" before a claim exists.

LAMBERT, J., joins this dissent.