**AK STEEL CORPORATION,**
Appellant,

v.

**Thomas JOHNSTON; Hon. Irene Steen, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**and**

**AK Steel Corporation, Appellant,**

**Ray Allen; Hon. James L. Kerr, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2004–SC–0129–WC,
2004–SC–0162–WC.

Supreme Court of Kentucky.

Jan. 20, 2005.

Christopher A. Dawson, Ashland, Counsel for Appellant.

George C. Perry, III, Robert G. Miller, Jr., Perry, Preston and Miller, Paintsville, Counsel for Appellees, Thomas Johnston and Ray Allen.

## OPINION OF THE COURT

These appeals concern the construction of KRS 342.7305. Affirming decisions of the Workers' Compensation Board (Board), which reversed in *AK Steel Corp. v. Thomas Johnston* (2004–SC–0129–WC) and affirmed in *AK Steel Corp. v. Ray Allen* (2004–SC–0162–WC), the Court of Appeals has determined that age-related impairment is not excluded from an AMA impairment when calculating the income benefit for a noise-induced hearing loss. We affirm.

### Thomas Johnston

It is undisputed that Mr. Johnston was exposed to hazardous noise repeatedly during his forty years' employment in the defendant-employer's steel mill as a maintenance inspector and repairman. He quit working in May, 2002, and subsequently filed a claim alleging an occupational hearing loss. When examined by Dr. Windmill, the university evaluator, Mr. Johnston was 59 years old.

Dr. Windmill evaluated the claimant and completed a Form 108–HL. He reported a 9% AMA impairment that within a reasonable medical probability was work-related. In response to a question whether any part of the impairment was due to the natural aging process, he replied, "Approximately 20% of Mr. Johnston's hearing loss can be explained based on the natural aging process."

When deposed, Dr. Windmill explained that when completing the Form 108–HL, he had estimated the effect of age-related factors by consulting tables that were appended to the hearing conservation amendment to the Federal Noise Control Act. He testified that the hearing loss chapter of the American Medical Associa-

tion's *Guides to the Evaluation of Permanent Impairment* (*Guides*) does not account for age and that there is no specific test or method to separate various causes of hearing impairment in an individual. He stated that the tables were based on statistical averages and might or might not apply to Mr. Johnston because not all people have a hearing loss due to age. He explained that although the tables are not part of the *Guides,* the only way to estimate what portion of an impairment is due to aging is to use them. Using the tables, he had estimated that 20% of Johnston's hearing loss was age-related, but he explained that was not to say that 20% of Johnston's impairment was due to his age.

### Ray Allen

It was undisputed that Mr. Allen was exposed to hazardous noise daily during the 35 years he worked in the defendant-employer's steel mill. He quit working on January 31, 2002, and subsequently filed a claim alleging an occupational hearing loss. When evaluated by Dr. Windmill, the university evaluator, Mr. Allen was 60 years old.

As in the Johnston case, Dr. Windmill evaluated the claimant and completed a Form 108–HL. He reported an 8% AMA impairment that within a reasonable medical probability was work-related. In response to a question whether any part of the impairment was due to the natural aging process, he replied, "Approximately 25 to 30% of Mr. Allen's hearing loss can be explained based on the natural aging process."

When deposed concerning the method for estimating age-related impairment, Dr. Windmill explained that the tables that were appended to the hearing conservation amendment to the Federal Noise Control Act showed average hearing levels by age and that he had used the tables as a basis for his estimate of Mr. Allen's age-related hearing loss. Addressing the effect of age on hearing, Dr. Windmill explained that many factors cause ear damage over time such as noise, medications, chemicals, diet, and artery disease. The effects of such damage are generally measurable between the ages of 45–50 and increase progressively. Some age-related effects would be expected at age 60. Dr. Windmill stated, however, that an estimate that age accounted for 25% of Mr. Allen's hearing loss did not mean that it accounted for 25% of his 8% AMA impairment because AMA impairment considers only hearing loss at the middle frequencies involved in speech. In his opinion, using the tables to apportion part of an AMA impairment to age is akin to comparing apples and oranges. Although it is not difficult to do, "It's definitely speculative." Asked whether he could state with reasonable medical probability that some portion of Mr. Allen's impairment was not due to occupational noise exposure, he stated, "No."

### Discussion

KRS 342.0011 defines the term "injury" as follows:

(1) "Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. "Injury" does not include the effects of the natural aging process, and does not include any communicable disease unless the risk of contracting the disease is increased by the nature of the employment. "Injury" when used generally, unless the context indicates otherwise, shall include an occupational disease and damage to a prosthetic appliance, but shall not in-

clude a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury.

KRS 342.730(1)(b) addresses the calculation of income benefits for permanent partial disability. It bases the amount of the benefit on the extent of the impairment caused by the injury as determined by the latest available edition of the *Guides*. Chapter 11 of the Fifth Edition addresses impairments of the Ear, Nose, Throat, and Related Structures. Section 11.2a concerns the criteria for rating impairment due to hearing loss. *Id.* at 246–47. It indicates that because tinnitus in the presence of a hearing impairment may impair speech discrimination, up to a 5% impairment should be added for tinnitus if the condition affects the patient's ability to perform activities of daily living. It also indicates that no correction should be made for presbycusis, which *Stedman's Medical Dictionary* 1135 (5th Unabridged Lawyers' Edition 1982) defines as a loss of the ability to perceive or discriminate sounds that occurs with age but varies in pattern and age of onset. The *Guides* explain that impairment is rated without regard to its cause, that a correction for age would underestimate the true magnitude of the impairment, and that allocating an impairment to various causes is a separate matter from determining its magnitude. *Id.* at 247.

Effective December 12, 1996, the legislature enacted KRS 342.7305, which specifically addresses occupational hearing loss due to hazardous noise. It provides, in pertinent part, as follows:

(1) In all claims for occupational hearing loss caused by either a single incident of trauma or by repetitive exposure to hazardous noise over an extended period of employment, the extent of binaural hearing impairment shall be determined under the latest available edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

(2) Income benefits payable for occupational hearing loss shall be as provided in KRS 342.730, except income benefits shall not be payable where the binaural hearing impairment converted to impairment of the whole person results in impairment of less than eight percent (8%). No impairment percentage for tinnitus shall be considered in determining impairment to the whole person.

(3) The commissioner shall provide by administrative regulation for prompt referral of hearing loss claims for evaluation, for all medical reimbursement, and for prompt authorization of hearing enhancement devices.

(4) When audiograms and other testing reveal a pattern of hearing loss compatible with that caused by hazardous noise exposure and the employee demonstrates repetitive exposure to hazardous noise in the workplace, *there shall be a rebuttable presumption that the hearing impairment is an injury covered by this chapter,* and the employer with whom the employee was last injuriously exposed to hazardous noise shall be exclusively liable for benefits. (emphasis added).

■ KRS 342.0011(1) and KRS 342.730(1)(b) are general provisions. KRS 342.0011(1) establishes that work-related trauma must proximately cause a harmful change in order to be considered an injury and that the effects of the natural aging process are not to be considered an injury. A finding that a worker has sustained an injury entitles the individual to reasonable and necessary medical benefits without regard to whether the injury causes a permanent impairment. *See Caldwell Tanks v. Roark,* 104 S.W.3d 753 (Ky.2003). KRS

342.730(1)(b) bases the calculation of income benefits upon impairment that is determined under the *Guides,* which indicate that tinnitus warrants the addition of up to a 5% hearing impairment, that the magnitude of a hearing impairment is to be calculated without regard to its cause, and that the allocation of cause is a separate matter.

Although KRS 342.0011(1) generally defines a compensable injury, KRS 342.7305 is a specific and comprehensive provision addressing claims for traumatic hearing loss; therefore, it may be viewed as controlling such claims. *Boyd v. C & H Transportation,* 902 S.W.2d 823 (Ky.1995). Unlike KRS 342.0011(1), KRS 342.7305(4) makes no reference to the natural aging process and does not require direct proof of causation. Instead, it provides a rebuttable presumption that the worker's impairment due to hearing loss is an injury upon proof of a pattern of hearing loss that is compatible with long-term hazardous noise exposure. If the employer fails to rebut the presumption, the worker is viewed as having met the burden to prove that work-related trauma proximately caused the harmful change for which benefits are sought, i.e., the AMA impairment.

■ Appellees Johnston and Allen sought income benefits based upon evidence of an AMA impairment due to hearing loss. Each produced evidence warranting a presumption that his impairment was a compensable injury. Although the university evaluator testified that tables have been compiled regarding the average hearing loss at particular ages and although he estimated that a portion of these workers' hearing impairments was age-related, he also testified that not all individuals suffer from age-related hearing loss, that the only way to apportion the cause of hearing loss in an individual with occupational noise exposure is to use the tables, and that he could not state with certainty that an individual with such exposure actually had an age-related hearing loss. At issue is whether KRS 342.7305 permits a consideration of the entire AMA impairment due to hearing loss, without regard to age-related changes, or whether it requires part of the impairment to be excluded based upon evidence that part of the underlying hearing loss is age-related. The question then becomes whether statistical evidence estimating age-related hearing loss partially rebuts KRS 342.7305(4)'s presumption that a worker's entire impairment is work-related and requires an apportionment of causation.

KRS 342.7305(1) requires the amount of binaural hearing impairment to be determined under the *Guides.* KRS 342.7305 makes no reference to age-related changes, which are included in AMA impairment under the *Guides;* whereas, KRS 342.7305(2) creates an exception to the *Guides* by excluding impairment from tinnitus. Furthermore, it permits an income benefit only in those instances where the AMA impairment due to hearing loss equals or exceeds 8%.

Table 11–3, found on page 251 of the Fifth Edition of the *Guides,* indicates that a 98.9–100% binaural hearing impairment converts to a 35% AMA impairment and that a 21.5–24.5% binaural hearing impairment converts to an 8% AMA impairment. It is apparent, therefore, that the 8% threshold found in KRS 342.7305(2) represents a substantial binaural hearing impairment. When responding to the Form 108HL, Dr. Windmill estimated that 20% of Johnston's hearing impairment and approximately 25–30% of Allen's hearing impairment was age-related. Hence, even if one were to assume that they were among those individuals who suffer from age-related hearing loss as well as occupational hearing loss, the overwhelming majority of

their hearing impairment was occupational. It appears, therefore, that the threshold limits income benefits to instances where the impairment is substantial and workplace trauma is likely to be a substantial cause. In view of KRS 342.7305's explicit reliance on the *Guides* and KRS 342.7305(2)'s explicit provision to exclude tinnitus from an AMA impairment when calculating an income benefit, we are convinced that the legislature would have been equally explicit if it had intended for there to be another exclusion based upon age. Likewise, in view of Dr. Windmill's testimony, we are not convinced that an AMA impairment based upon hearing loss must be apportioned between age-related and work-related causes absent an explicit provision in KRS 342.7305(4).

Each of these workers proved an AMA impairment that equaled or exceeded 8%; therefore, each was entitled to partial disability benefits that were based upon his AMA impairment. Mr. Allen was properly awarded a partial disability benefit that was based on his 8% impairment. Mr. Johnston's claim was dismissed, however, and must be remanded for the ALJ to award an income benefit that is based upon his full 9% impairment.

The decision of the Court of Appeals in each of these appeals is affirmed.

All concur.