PELLA CORPORATION, Appellant,

v.

Joyce BERNSTEIN; Honorable Douglas W. Gott, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2010–SC–000448–WC.

Supreme Court of Kentucky.

April 21, 2011.

Richard Christion Hutson, Whitlow, Roberts, Houston & Straub, PLLC, Paducah, KY, Counsel for Appellant, Pella Corporation.

Jeffery Roberts, Murray, KY, Counsel for Appellee, Joyce Bernstein.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) found that the claimant was partially disabled by work-related injuries to her left shoulder and cervical and lumbar spine. Convinced that an ALJ had no authority to apportion the 10% impairment rating assigned to the "shoulders," "greater on the left than the right," the ALJ awarded income benefits only for the back injuries. Reversing in part and remanding, the Workers' Compensation Board held that the ALJ had discretion to apportion the impairment rating and could reasonably assign a 6 to 10% rating to the left shoulder. The Court of Appeals affirmed.

Appealing, the employer emphasizes that KRS 342.730(1)(b) requires an award to be based on a permanent impairment rating. The employer argues that an injured worker has the burden to prove the specific impairment rating that an injury produces and that only a physician has the medical expertise to assign such a rating. Thus, having found that the claimant sustained only a permanent left shoulder injury, the ALJ could not apportion the bilateral impairment rating between the shoulders. We disagree and affirm.

The claimant was born in 1954 and has a high-school education. Her employment history includes work for the postal service and Wal–Mart as well as work from 2002–2004 as a night auditor and registration clerk for a Holiday Inn. She began working for the defendant-employer in June 2004 as a frame cleaner in a window-manufacturing plant. Her application for benefits alleged injuries to her neck, shoulder, arm, hand, and low back due to repetitive trauma incurred while lifting window frames on January 27, 2005.

Dr. Jackson, an orthopedic surgeon, first saw the claimant in July 2005, on referral from the physician who was treating her neck injury. She complained of discomfort and a decreased range of motion in the left shoulder, which she attributed to the repetitive nature of her work. His diagnostic impression was "subacromial bursitis of the left shoulder with severe developing adhesive capsulitis" and "? cervical disc disease." He recommended deferring treatment of the shoulder condition until the cervical spine condition was treated.

The claimant returned to Dr. Jackson in January 2006, after undergoing cervical spine surgery. He noted that she could abduct the left shoulder only to 45 degrees and recommended physical therapy. He noted in February 2006 that both shoulders were affected and that she could abduct 70 degrees to the left and 85 degrees to the right. Treatment notes from June 2006 indicate that she could abduct to 90 degrees in June 2006 but fail to specify whether on one or both sides. A final treatment note from August 2006 indicates that she could abduct 110 degrees on the right but less on the left, failing to specify the number of degrees on the left.

Dr. Jackson completed a Form 107 medical report in September 2008. The form indicates that he diagnosed "adhesive capsulitis of the shoulders greater on the left

than the right." He assigned a 10% permanent impairment rating.

An ALJ determined from the parties' evidence that the claimant sustained injuries to her neck and back that produced permanent impairment ratings of 25% and 10% respectively, for a combined whole-person permanent impairment rating of 33%. The ALJ found that the claimant sustained a permanent injury to her left shoulder but did not sustain a permanent right-shoulder injury that warranted a permanent impairment rating, basing the latter finding on certain medical evidence and her testimony that she no longer had any right shoulder complaints. Noting that Dr. Jackson failed to separate the 10% impairment rating that he assigned to the shoulders, the ALJ concluded that the evidence did not permit an award for the left shoulder. Convinced that the claimant was only partially disabled, the ALJ multiplied the 33% impairment rating by a factor of 1.5 under KRS 342.730(1)(b) and based the claimant's income benefit on a 49.5% disability rating. The benefit was then enhanced by a factor of three under KRS 342.730(1)(c)1, further enhanced by a factor of .2 under KRS 342.730(1)(c)3, and made payable for 425 weeks because the claimant's disability rating was less than 50%.[1]

The claimant's petition for reconsideration pointed out that Dr. Jackson's testimony clearly attributed at least half of the 10% impairment rating he assigned to the left shoulder. She argued that to base an award for the left shoulder injury on a 5% rating would be reasonable under the circumstances and requested the ALJ to do so. The ALJ overruled the petition, however, reasoning that an ALJ lacks the discretion "to invade the evidence of bilateral shoulder impairment and speculate on a percentage that is applicable to the left shoulder."

■ The employer maintains that the ALJ acted properly in refusing to apportion the bilateral shoulder impairment. Relying on *Kentucky River Enterprises, Inc. v. Elkins,*[2] the employer argues that the proper interpretation of the American Medical Association's *Guides to the Evaluation of Permanent Impairment (Guides)* and the proper assessment of impairment ratings are medical questions to be answered by medical experts. The employer acknowledges that an ALJ may determine the legal significance of conflicting medical opinions[3] but emphasizes that there was no conflicting evidence in this case. Only Dr. Jackson assigned an impairment rating, and he based it on both shoulders without apportioning it.

As applicable to this appeal, Chapter 342 requires the permanent impairment rating that a work-related injury produces to be determined by the Fifth Edition of the *Guides.*[4] KRS 342.730(1)(b) requires a partial disability benefit to be based on the injured worker's disability rating, which is the product of the permanent impairment rating "selected by" the ALJ and the corresponding factor set forth in the table found in KRS 342.730(1)(b).[5]

■ Although the permanent impairment rating that an injury produces is a medical question, an ALJ has some discretion to select the rating upon which to base a partial disability award. An ALJ may

---

**1.** KRS 342.730(1)(d).

**2.** 107 S.W.3d 206, 210 (Ky.2003).

**3.** *Tokico (USA), Inc. v. Kelly,* 281 S.W.3d 771, 775 (Ky.2009).

**4.** KRS 342.730(1)(b); KRS 342.0011(35).

**5.** KRS 342.0011(36).

consult the *Guides* when considering the medical evidence and deciding which expert to rely upon.[6] An ALJ may rely on at least some of the conversion tables found in the *Guides,* such as the tables used to combine whole-person impairment ratings or to convert a binaural hearing impairment to a whole-person impairment.[7] An ALJ may also translate a Class 1–5 impairment assigned to a mental condition under the Fourth or Fifth Edition of the *Guides* into a percentage impairment by using the last edition that equated Class 1–5 impairment with percentages.[8] We view the present facts as also warranting the exercise of discretion.

Dr. Jackson clearly thought that the left shoulder injury warranted a permanent impairment rating. Although he assigned a 10% rating based on impairment to both shoulders, his treatment notes and Form 107 would permit the ALJ to infer reasonably that he attributed more than half of the rating to the left shoulder. We conclude that the ALJ was free under the circumstances to consider the relevant medical evidence and select a reasonable impairment rating to be used to calculate income benefits.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

---

**6.** *Lanter v. Kentucky State Police,* 171 S.W.3d 45, 52 (Ky.2005).

**7.** *See Caldwell Tanks v. Roark,* 104 S.W.3d 753 (Ky.2003).

**8.** *Knott Co. Nursing Home v. Wallen,* 74 S.W.3d 706 (Ky.2002).