SPECIAL FUND, Appellant,

v.

Clifford CLARK, Jr.; The Levinson Steel Company; Zaring P. Robertson, Administrative Law Judge; and Workers' Compensation Board, Appellees.

and

The Levinson Steel Company, Appellant,

v.

Clifford Clark, Jr.; Robert L. Whittaker, Director of Special Fund; Kentucky Court of Appeals; Zaring P. Robertson, Administrative Law Judge; and Workers' Compensation Board Appellees.

Nos. 98–SC–0946–WC, 98–SC–0992–WC.

Supreme Court of Kentucky.

Aug. 26, 1999.

Benjamin C. Johnson, Labor Cabinet—Special Fund, Louisville, for Special Fund/Whittaker.

Michael W. Alvey, W. Russell Duty, Owensboro, for The Levinson Steel Company.

Thresa N. Taylor, Vaughn & Hinton, Madisonville, for Clifford Clark, Jr.

## OPINION OF THE COURT

This workers' compensation appeal concerns the extent to which a claim for a gradual injury to the claimant's knees was barred by the period of limitations contained in KRS 342.185.

Claimant's date of birth is December 14, 1933. He has a seventh grade education, and was employed by the defendant in 1970 as a truck driver. He testified that, in addition to driving loads of steel, his duties included loading and unloading the truck and working in the warehouse which had a concrete floor. In 1985, claimant injured his right knee when he slipped in some oil. An accident report was filed with the Department of Workers' Claims, and after receiving temporary total disability (TTD) benefits for approximately three weeks claimant returned to work. In 1987, claimant underwent surgery to both knees, at which point he missed approximately five months of work. At the hearing, claimant testified that he did not obtain treatment for his knee problems from a company doctor but that the surgery was performed by Dr. Barlow and that benefits were paid under the employees sickness and accident policy. He returned to work without restrictions. His symptoms grew progressively worse over time, and he began to work in the warehouse more frequently.

Claimant continued to work until July 27, 1994. Shortly thereafter, he came under the treatment of Dr. Mesa who performed a prosthetic replacement of his left knee. Dr. Mesa attributed 80% of claimant's impairment to degenerative arthritis and 20% to the aggravation of the degenerative condition by his work. Dr. Gaw examined claimant in October, 1995. He indicated that the type of work claimant did probably contributed to the development of his condition and caused it to accelerate. Dr. Laughlin examined claimant in October, 1995, and assigned a 16% impairment rating, 12% of which dated back at least to 1987. He indicated that most of claimant's impairment was due to wear and tear on his knee rather than a specific injury. This workers' compensation claim was filed on July 3, 1995. It alleged, among other things, a gradual injury to claimant's knees.

The employer argued that all of claimant's disability was due to a gradual injury to his knees which became manifest in 1987 and that a claim for the injury was barred by limitations; however, the Administrative Law Judge (ALJ) rejected the argument. Instead, the ALJ determined that claimant suffered a traumatic work-related knee injury in 1985 which required surgery in 1987. The 1985 injury resulted in a 30% noncompensable prior, active disability. The ALJ also determined that the 1985 incident was followed by a work-related gradual injury to claimant's knees which became manifest on July 27, 1994, and which accounted for a 45% occupational disability. Liability for the 45% disability was apportioned equally between the employer and the Special Fund.

Pursuant to an appeal by the employer, the Workers' Compensation Board (Board) pointed out that the 1985 incident had involved only the right knee and concluded that there was no evidence to support the finding that the surgery which was performed on both knees in 1987 was attributable to the incident. As a result, the claim was remanded to be decided upon the basis of correct findings of fact. The Board declined to address the employer's limitations argument except to note that "the ALJ never concluded that [claimant's] current injuries were caused by his 1985 fall."

Upon remand, the ALJ conceded that relevant facts had been overlooked or confused in the initial opinion. The ALJ then noted that the 1987 surgery had involved both knees and that nothing in the record related the surgery to the 1985 incident. The ALJ also noted that, after the surgery, claimant had returned to work; that after returning to work he experienced a progressive worsening of his symptoms of pain; that he continued working up until July 27, 1994; and that he filed the claim within two years of that date.

After reviewing the medical evidence, the ALJ concluded that claimant's entire disability was due to cumulative trauma and first manifested in 1987, at which point

claimant underwent bilateral knee surgery; that claimant returned to work after surgery with some degree of active disability; that he continued to be subject to minitrauma through July 27, 1994; and that his disability progressively increased during the period between his return from surgery and July 27, 1994. The ALJ then concluded that each minitrauma during that period effectively constituted a separate injury; therefore, disability which could be attributed to trauma incurred within two years preceding the filing of the claim was separately compensable from that which was preexisting and active when claimant returned to work after surgery. Based upon the conclusion that claimant's disability was related to his entire career, of which only 55 weeks came within the two-year period of limitations, the ALJ prorated the 75% occupational disability over claimant's worklife and determined that a 3.3% occupational disability remained compensable. Claimant was also awarded medical benefits.

The Board affirmed the decision; however, claimant appealed, and the Court of Appeals reversed. In doing so, the Court of Appeals noted the existence of a gradual injury which became manifest in 1987 and which required bilateral knee surgery. Unlike the ALJ and the Board, the court viewed all of the trauma incurred after the surgery as causing a second gradual injury which became manifest on July 27, 1994. Utilizing the ALJ's initial findings that claimant had returned to work with a 30% occupational disability after surgery and that claimant had sustained an additional 45% occupational disability between his return to work and his last day of work, the Court of Appeals concluded that the claim for the second gradual injury was timely filed and that claimant was entitled to an award for a 45% occupational disability.

The employer and the Special Fund appeal. They argue that claimant's failure to file a claim within two years of the manifestation of disability in 1987 barred any claim for disability due to trauma incurred up until that date. With regard to trauma incurred after the 1987 surgery, they assert that the ALJ's findings upon remand indicated that claimant suffered but one gradual injury, the extent of which increased as he sustained additional trauma at work. They conclude that, because the claim was not filed within two years of the manifestation of a disabling injury, only that occupational disability which was attributable to trauma incurred within two years of the filing of the claim remained compensable. They assert, therefore, that the ALJ's findings on remand were supported by substantial evidence. They also assert that the ALJ was permitted to prorate claimant's occupational disability over his worklife in order to determine what portion of the disability remained compensable as of the filing of his claim.

■ KRS 342.185 provides that notice of an "accident" shall be given "as soon as practicable" and that a claim for benefits relative to a resulting injury must be filed within two years after the suspension of voluntary payments by the employer or two years after the "date of accident," itself, whichever is later. Chapter 342 provides that a delay in giving notice may be excusable; however, it permits no such leeway for a failure to file a timely workers' compensation claim. In *Alcan Foil Products v. Huff,* Ky., 1999 WL 401886 (1999), we noted the fact that gradual injury is dynamic and addressed the fact that application of the "date of accident" language of KRS 342.185 to claims for gradual injury was problematic. We noted that although the concept of a gradual, work-related injury was recognized in *Haycraft v. Corhart Refractories Co.,* Ky., 544 S.W.2d 222 (1976), and the apportionment of liability for a gradual injury was addressed in *Jones & Laughlin Steel Corp. v. Goben,* Ky.App., 600 S.W.2d 481 (1980), the question of how to apply KRS 342.185 to a claim for gradual injury first arose in *Randall Co. v. Pendland,* Ky.App., 770 S.W.2d 687 (1988).

Our opinion in *Alcan Foil Products v. Huff* explained that in *Randall Co. v. Pendland* it had been recognized that because of the manner in which a gradual injury develops, the worker will not be aware that an injury has been sustained until it manifests itself in the form of physically and/or occupationally disabling symptoms. We noted that, unlike the case with KRS 342.316 which controls claims for occupational disease, the period of limitations set forth in KRS 342.185 is not tolled by continued employment after the worker becomes aware that a work-related gradual injury has been sustained. We pointed out that the notice requirement also arises with the manifestation of disability and that one of the purposes of the notice requirement is to give the employer an opportunity to take measures to minimize the worker's impairment and, hence, its liability. In view of the foregoing, we construed the meaning of the term "manifestation of disability," as it was used in *Randall Co. v. Pendland,* as referring to physically and/or occupationally disabling symptoms which lead the worker to discover that a work-related injury has been sustained.

 Once a worker is aware of the existence of a disabling condition and the fact that it is caused by work, the worker would also be aware that continuing to perform the same or similar duties was likely to cause additional injury. For that reason, the rationale which supports the decision in *Randall Co. v. Pendland* does not support tolling the period of limitations for whatever additional injury is caused by trauma incurred after the worker discovers the existence of a work-related gradual injury. It follows, therefore, that where a claim is not filed until more than two years after the worker's discovery of an injury and the fact that it was caused by work, KRS 342.185 would operate to prohibit compensation for whatever occupational disability is attributable to trauma incurred more than two years preceding the filing of the claim.[1]

 The ALJ who considered the instant claim determined that the manifestation of disability occurred in 1987. Although it is apparent that claimant experienced disabling symptoms of the degenerative condition in 1987 which caused him to undergo surgery, it is not apparent whether he knew at the time that work contributed to the development of the condition, and the ALJ made no finding in that regard. The medical records from Dr. Barlow were introduced into evidence by the employer and do not shed light on the matter. We conclude, therefore, that the claim must be remanded to the ALJ to make a finding from the evidence concerning when claimant became aware that work contributed to the development of the degenerative condition in his knees. If that occurred in 1987, the manifestation of disability occurred in 1987, and the decision which the ALJ made on remand should be reinstated. If it occurred at a subsequent point in time, more of the claim may be compensable, and the decision should be amended accordingly.

The decision of the Court of Appeals is hereby reversed, and the claim is remanded to the ALJ for further proceedings which are consistent with this opinion.

All concur.

---

1. The ALJ who considered the claims in *Alcan Foil Products v. Huff* determined that each worker was aware of his hearing loss and the fact that it was caused by work more than two years before the claim was filed. None of the workers suffered an increase of occupational disability due to trauma incurred within two years of the filing of his claim. The Court concluded, therefore, that none of the claims was timely filed.