Caldwell TANKS, Appellant,

v.

Eddie ROARK; Hon. J. Kevin King, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2002–SC–0214–WC.

Supreme Court of Kentucky.

Feb. 20, 2003.

Rehearing Denied June 12, 2003.

James Gordon Fogle, Ferreri & Fogle, Louisville, for Appellant.

Grant S. Roark, Louisville, for Appellee.

## OPINION OF THE COURT

Convinced that he lacked the medical expertise to translate hearing impairments into AMA impairments, an Administrative Law Judge (ALJ) determined that a noise-induced hearing loss was due to cumulative trauma and that because the claimant failed to prove an impairment that was attributable to the two years before the claim was filed, the entire claim was barred by limitations. *Special Fund v. Clark*, Ky., 998 S.W.2d 487 (1999). Although a partially dissenting opinion indicated that the claim should be remanded for further analysis under *Special Fund v. Clark*, the Workers' Compensation Board (Board) affirmed, noting that the claimant's sole argument was that his condition was due to an occupational disease. The Court of Appeals determined, however, that compelling evidence established that at least part of the claim was timely under *Special Fund v. Clark* and reversed on that basis. We affirm.

The claimant was born in 1946, completed the ninth grade, and later earned a GED. In 1987, the defendant-employer hired him to weld steel water tanks. The company required a pre-employment physical and annual hearing tests thereafter. Operating near the welding area were noisy machines such as air impact chisels, air and electric grinders, and an air blaster. Although the employer provided hearing protection, he wore it only about 80% of the time so that he could hear the nearby cranes and forklifts that were hazardous in their own right. The claimant was informed that he had developed a severe hearing loss in 1993 but first noticed problems, himself, in 1995. He testified that the noise exposure was so intense during the last 1½ years that, despite wearing earplugs, his ears bled.

On October 31, 1995, the employer completed a Form SF–1, noting that the claimant reported a noise-induced hearing loss. A November 29, 1995, medical report from Dr. Cohen indicated that the claimant was encouraged to consider hearing aids at that time. The claimant testified that in both 1997 and 2000 he asked the company for help in purchasing them and that although he was told that they would check into it, he never received a response. Thus, in March, 1998, he purchased them himself. He indicated that he had never filed a worker's compensation claim before and had requested a form from the employer on several occasions, without success. Eventually, he contacted the Department of Workers' Claims (Department) and was advised to consult an attorney. He did so and filed this claim on October 7, 2000, while he was still working.

The Department scheduled a medical evaluation for December 5, 2000, at which time Dr. Windmill advised the claimant of his profound hearing loss and warned him of the risks of continued noise exposure. After informing his employer, he was offered an alternative job but considered it to be as noisy as his previous work. Thus, frightened by the prospect of becoming deaf and concerned that using adequate hearing protection would compromise his safety, he quit working on January 10, 2001.

The employer's safety officer testified that noise levels in the plant complied with OSHA regulations. The medical evidence consisted solely of annual hearing exam reports and Dr. Windmill's testimony concerning the December 5, 2000, evaluation.

He received a history that included: exposure to loud noises at work for 8 to 10 hours per day, for 10 of the past 13 years; the onset of difficulty hearing in 1995; a rapid deterioration thereafter; and the use of hearing aids for the past three years. Dr. Windmill restricted the claimant to using hearing protection when exposed to loud noises and indicated that further damage could result in complete deafness. When deposed, Dr. Windmill described the mechanism by which a noise-induced hearing loss occurs, indicating that the membranes of the inner ear react to the vibrations caused by loud noise much like a flag being whipped about in heavy wind and destroyed. He explained that hearing loss progresses naturally, with age, but does so more rapidly in an individual who has a history of exposure to loud noises. In his opinion, the claimant's hearing loss was work-related.

The pre-employment audiogram from March, 1987, revealed a severe high-frequency hearing loss. Subsequent reports revealed a progressive decline over the next decade. By November, 1997, there was a moderately severe loss at speech frequencies and a profound loss at high frequencies. The most recent reports, including Dr. Windmill's, are summarized as follows:

| | Impairment-left ear | Impairment-right ear | Combined |
|---|---|---|---|
| November, 1998 | 65.6% | 60.0% | 60.9% |
| July, 2000 | 71.3% | 71.3% | 71.3% |
| December, 2000 * | 93.8% | 84.4% | 85.9% |

* This report was part of Dr. Windmill's evaluation. He equated the 85.9% binaural hearing impairment to a 30% whole-body impairment.

Among the contested issues were whether the claimant filed his claim within the applicable statute of limitations and whether there was a pre-existing active disability. The claimant maintained that his hearing loss was due to an occupational disease and was subject to a three-year period of limitations; thus, the entire claim was timely. He also raised an alternative argument that even if the condition were due to a gradual injury, at least part of the claim was compensable under *Special Fund v. Clark, supra.*

After determining that the hearing loss was due to a work-related gradual injury that was subject to a two-year period of limitations, the ALJ determined that the claimant clearly knew his condition was work-related by October 31, 1995, when he reported it to the employer. Thus, the period of limitations began to run at that point. The ALJ recognized that the "raw numbers" changed from 1997 through 2000, but concluded that medical expertise was required to translate the data into a percentage of impairment. Noting the absence of medical testimony that an AMA impairment was attributable to the two-year period before the claim was filed, the ALJ determined that the claimant failed to show any specific increase in impairment or disability during the period and dismissed the entire claim.

The claimant's appeal to the Board maintained only that his condition was an occupational disease and that his claim was timely. Likewise, when appealing to the Court of Appeals, his sole argument was that an occupational hearing loss comes within the definition of an occupational disease and that because his claim was filed within three years of his last noise exposure, it was timely. Although deeming the argument to be meritless, the

Court noted that the evidence "overwhelmingly" demonstrated an increased hearing loss during the period from two years before the claim was filed and January, 2001, when the claimant quit working. Concluding that the ALJ erred by dismissing the claim, the Court reversed and remanded.

This appeal by the employer asserts that the claimant failed to preserve an appellate argument that disability from trauma incurred within two years before the claim was filed was compensable. Furthermore, it points to the lack of medical testimony that the claimant sustained at least an 8% AMA impairment during the relevant two-year period. KRS 342.7305(2). Finally, it asserts that disability from trauma incurred after the filing date is properly the subject of a separate claim and that such a claim would presently be barred by limitations.

The claimant points out that he raised the applicability of *Special Fund v. Clark, supra,* before the ALJ and argues that the issue was adequately preserved on appeal by his argument that the claim was erroneously dismissed on the basis of limitations. Asserting that there clearly was evidence that his condition worsened in the two years before his claim was filed, he maintains that the Court of Appeals was authorized to remand for further consideration of his entitlement to income and medical benefits in order to avert a manifest injustice. *Pittsburg & Midway Coal Mining Co. v. Rushing,* Ky., 456 S.W.2d 816 (1969). Although he did not cross-appeal, he continues to argue that the claim was subject to KRS 342.316 rather than KRS 342.185.

■ This claim was filed on October 7, 2000. Therefore, it was timely with regard to the effects of trauma incurred after October 7, 1998. *Special Fund v. Clark, supra.* The employer maintains that a separate claim was required for any hearing loss that was due to trauma incurred between October 7, 2000, and the claimant's last day of work on January 10, 2001. We note, however, that the claimant quit working shortly after his claim was filed but before it was considered. Furthermore, the most recent evidence as well as the evidence obtained closest in time to the date the claim was filed was Dr. Windmill's exam of December 5, 2000, which was scheduled by the Department pursuant to KRS 342.7305(3). Under those circumstances, we are not persuaded that a subsequent claim was required.

■ Although KRS 342.0011(1) requires objective medical findings as evidence of a harmful change, nothing requires an AMA impairment for a finding of an "injury" and an award of medical benefits. Therefore, if a "harmful change" resulted from trauma incurred after October 7, 1998, the claimant sustained an injury and was eligible for medical benefits. Although it is open to debate whether KRS 342.7305(2) requires an additional 8% impairment in a *Special Fund v. Clark, supra,* situation, as the employer maintains, it is undisputed that proof the claimant sustained at least an 8% AMA impairment from trauma incurred after October 7, 1998, would entitle him to income benefits as well.

The ALJ noted that the claimant's "raw numbers" (hearing impairments) changed from 1997 through 2000 but thought that he lacked the authority and expertise to determine the significance of the numbers. For that reason, the ALJ concluded that the claimant failed to prove he sustained an impairment or disability during the relevant two-year period. Furthermore, the ALJ failed to determine whether the relevant trauma caused a harmful change and dismissed the entire claim. A review of the AMA's *Guides to the Evaluation of Permanent Impairment* (Guides) reveals,

however, that the evidence compelled a favorable decision on both counts.

■ Chapter 9 of the 4th edition of the Guides contains a table on page 228 that converts a binaural hearing impairment into an AMA whole-body impairment. The table is found in Chapter 11 of the 5th edition on page 250. Although medical expertise is required to perform audiometric testing, it is apparent that no medical expertise is required to read this conversion table. For that reason, we are of the opinion that when faced with unrefuted evidence of increased hearing impairment in the relevant period, the ALJ was both authorized and required to consult the appropriate edition of the Guides and to convert the 1998 hearing impairment into an AMA whole-body impairment. Furthermore, even if the AMA impairment did not increase in the two-year period, an increased hearing impairment in that period would have established that a harmful change occurred and warranted an award of medical benefits.

The evidence indicates that the claimant's binaural impairment in November, 1998 was 60.9%, which converts to an AMA impairment of 21%. When examined by Dr. Windmill in December, 2000, the binaural impairment was 85.9%, which, as he testified, converts to a 30% AMA impairment. It is apparent; therefore, that the claimant sustained a 9% AMA impairment between the two dates using either edition of the Guides. Under those circumstances, he was entitled to medical benefits and to an income benefit based upon a 9% AMA impairment. We conclude, therefore, that the ALJ's decision to dismiss the claim in its entirety was contrary to the evidence and the applicable law.

■ The basis for the claimant's appeal was that his claim was timely under KRS 342.316. Yet, although he abandoned the *Special Fund v. Clark, supra,* argument on appeal, he did ask the ALJ to consider it. Furthermore, the ALJ failed to analyze the evidence adequately under the decision, and the evidence compelled an award of both income and medical benefits. We are persuaded, therefore, that the error was subject to review on appeal in order to avert a manifest injustice. *See Carrs Fork Corp. v. Kodak Mining Co.,* Ky., 809 S.W.2d 699 (1991). For that reason, we conclude that the Court of Appeals did not err in reversing the Board after determining that the ALJ erred as a matter of law by dismissing the entire claim as being time-barred.

The decision of the Court of Appeals is hereby affirmed, and the claim is remanded to the ALJ for further proceedings and the entry of an award.

All concur.

