**UNIVERSITY OF KENTUCKY FAMILY PRACTICE,**
Appellant

v.

**Linda LEACH, Thomas Davis, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2007-SC-000051-WC.

Supreme Court of Kentucky.

Nov. 1, 2007.

Theresa Gilbert, Ann Forrest Batterton, Denny, Morgan Rather and Gilbert, Lexington, KY, Counsel for Appellant, University of Kentucky Family Practice.

Lloyd R. Edens, Wilson Polites McQueen, Lexington, KY, Counsel for Appellee, Linda Leach.

## OPINION OF THE COURT

KRS 342.185 requires an application for workers' compensation benefits based on an injury to be filed within two years after the date of accident or two years after the employer's last payment of voluntary income benefits, whichever occurs last. An Administrative Law Judge (ALJ) found that the claimant timely filed an application seeking medical benefits due to a work-related gradual injury and awarded them. The Workers' Compensation Board and the Court of Appeals affirmed. Appealing, the employer asserts that the claim is barred because no evidence showed that the claimant's disability increased within two years before she filed a claim. We affirm because the claimant sought only medical benefits and substantial evidence indicated that work performed within two years before the filing date exacerbated a pre-existing work-related injury, producing symptoms that required medical treatment.

The claimant was born in 1958, completed high school, and attended three years of college. She began working for the defendant-employer in 1991, as a security guard, and later became an administrative clerk at the employer's Kentucky Clinic. Among other things, the job required her to sort mail by hand. In 1998 she began to experience a burning and cramping sensation in the thumb and fingers of her right hand. She informed her supervisor and was referred to Dr. Nickerson at the Clinic. She worked in the mail room for about a year and was placed on light duty eventually. Her symptoms abated eventually with treatment.

The employer appears to have paid some voluntary income benefits in 1998 and early 1999 because the record contains copies of letters that the Department of Workers' Claims sent to the claimant in December 1998 and January 1999. They informed her of the dates when the employer terminated voluntary income benefits and of the need to file an application for benefits within two years after the injury or the termination date, whichever occurred last. Nothing indicates that she did so.

In March 1999 the claimant became a patient assistant clerk. The job required her to use her right hand to answer and control over 100 telephone calls per day and also required extensive typing and writing. She remained in that position when the present claim was heard.

The claimant testified that the symptoms in her right hand began to return in October 2001. On March 19, 2002, she was unable to pick up items or grip for over five minutes. She informed her supervisor and was advised to contact the workers' compensation representative. When she did so, the representative informed her that she should consider her condition to be a new injury. The employer's insurance carrier continued to pay for her medical treatment as it had done since symptoms began in 1998.

In a letter dated March 22, 2004, the employer's insurance carrier informed the claimant that the statute of limitations for her March 19, 2002, claim had expired on March 19, 2004 and that it would not be responsible for any medical treatment ob-

tained after March 19, 2004. The claimant testified that, upon receipt of the letter, she telephoned the carrier and asked why she was informed of the statute of limitations only after it had expired. She was told that the carrier had no obligation to give her notice in advance and that it had notified her of the statute's expiration as a courtesy. On October 19, 2004, she filed an application for benefits in which she sought compensation only for her medical treatment.

On December 17, 2004, Dr. Nickerson examined the claimant and prepared a Form 107–I report. It stated that he had received a history of pain in the right trapezius, numbness and tingling in the first three fingers of the right hand, and swelling and cramping in the fingers. The symptoms began in August 1997, and the claimant associated them with the heavy use of her right upper extremity in her work. She sought treatment with her family physician initially and was referred to physical therapy. Subsequent treatment at the Kentucky Clinic included physical and occupational therapy, the use of a splint, and various neurological and radiological studies. Dr. Nickerson saw her on or about November 18, 1998, the first of approximately 30 visits over the following six years.

Dr. Nickerson's treatment notes both before and after March 19, 2002, record information that he gained from numerous physical examinations, such as the results of neurological examinations and measurements of the claimant's radial and ulnar pulses, the temperature of her hands and arms, her upper extremity reflexes, and her upper extremity range of motion. As of December 17, 2004, Dr. Nickerson diagnosed chronic myofascial pain syndrome involving the right middle trapezius muscle, which was secondary to repetitive overuse of her upper right extremity. He stated that the condition was both second-

ary to her work activities and exacerbated by her work activities, explaining that her symptoms abated when she was off work due to other medical conditions and flared up when she returned to work. She was able to continue her work because she could change positions and use a headset and other adaptive equipment. Dr. Nickerson also diagnosed Raynaud's phenomenon, which was secondary to the chronic myofascial pain syndrome, present sometimes when her pain was severe, and demonstrated by a sensation of cold in her right upper extremity and a change in skin coloration. Finally, he diagnosed an elevated/persistent sed rate of uncertain etiology. He noted that it increased when her pain was high and decreased when she took Celebrex and/or steroid preparations. Dr. Nickerson stated that the claimant's condition required a maintenance treatment program. At present it included: Celebrex, Flexeril as needed for muscle spasms, Ambien, Lidoderm patches as needed, intermittent physical therapy and trigger point injections, and permanent work restrictions. Dr. Nickerson assigned a 6% permanent impairment rating, attributing it entirely to the work-related condition that arose in 1997 and reached maximum medical improvement in about March 2000.

Dr. Kriss examined the claimant for the employer on March 8, 2005, and reviewed her medical records. He noted that she had complained of cervical, shoulder, and trapezius muscle symptoms to Dr. Nickerson in 2002–2004 but concluded that the diagnosis of chronic right trapezius myofascial pain syndrome no longer applied because she mentioned no such symptoms presently and because her physical and neurological exams were normal. He noted "fairly classic" symptoms of right carpal tunnel syndrome but stated that he could not confirm his clinical diagnosis by physical examination or the available testing.

He also stated that the symptoms dated to 1998, and had definitely worsened subjectively since March 2002. Although he could not confirm an objective worsening of the claimant's condition, he also found no evidence of symptom magnification, somatization, Waddell signs, or other factitious pain behaviors. Thus, he considered "her subjective history of worsening to most likely represent medical progression of the condition, even without objective confirmatory testing." He stated that a gradual worsening of the right-sided symptoms and absence of any left-sided symptoms, together with years of work activities that required much greater use of the right hand, indicated that the claimant's current right carpal tunnel syndrome was work-related. Explaining that the condition was "eminently treatable" with splints and perhaps surgery, he assigned no permanent impairment rating. He listed no restrictions but recommended optimizing workplace ergonomics to ameliorate the symptoms.

When the claim was submitted for a decision, the parties stipulated that the claimant "sustained work-related injuries on March 19, 2002, cumulative trauma continuing." The contested issues included: 1.) the extent and duration of the claimant's injury; 2.) whether the injury was caused by the claimant's work; 3.) whether she was entitled to medical treatment; 4.) whether *Special Fund v. Clark*, 998 S.W.2d 487 (Ky.1999), applied; 5.) whether the statute of limitations applied; 6.) whether the claimant sustained an injury as defined by KRS 342.0011(1); and 7.) whether she had a pre-existing active impairment.

The ALJ determined that *Special Fund v. Clark, supra*, applied, and that the claimant was entitled to be compensated for the effects of trauma incurred within two years before she filed the claim. The ALJ found that the effects of such trauma were manifested in her need for ongoing medical treatment for her gradual injury and that Dr. Nickerson's treatment notes documented a progression or deterioration of her condition after 2002 although her permanent impairment rating did not increase. He reported a causal relationship between her work and her condition, and he stated that her work continued to exacerbate the condition, explaining that the ". . . time line of exacerbations with work activities [and] remission when she is not involved in frequent repetitive work activities point[s] toward the causal relationship between work activities and her symptomatology." He also recommended a maintenance treatment program. The ALJ observed that even Dr. Kriss stated that the claimant had "fairly classic" symptoms of work-related right carpal tunnel syndrome. He found no evidence of symptom magnification, somatization, Waddell signs, or other factitious pain behaviors, and he stated that her subjective history of worsening after 2002 most likely represented medical progression of the condition. The ALJ concluded that the claimant sustained an injury due to trauma incurred within two years before her claim was filed and was entitled to medical treatment as provided by KRS 342.020(1).

The employer's argument on appeal is that *Special Fund v. Clark, supra*, is inapplicable to these facts and that to hold otherwise "is tantamount to finding there is no statute of limitations in cumulative trauma claims as long as the employee continues to work." It argues that the claimant's symptoms became manifest in October 2001, that she knew they were work-related, and that no objective medical evidence showed a subsequent worsening of her condition. Thus, there was no substantial evidence that an additional injury occurred because her disability did not increase within two years before she filed her claim.

The claimant relies on *Special Fund v. Clark, supra,* for the principle that disability due to trauma incurred less than two years before she filed her claim remains compensable. She argues that her award was supported by substantial evidence that work she performed on and after October 19, 2002, exacerbated her work-related condition and produced symptoms that required medical treatment. She also notes that the insurance carrier had paid for treating her work-related condition since 1998 and argues that it had an ethical obligation, if not a legal obligation, to inform her of the statute of limitations concerning the March 19, 2002, injury before it expired.

■ As amended effective December 12, 1996, KRS 342.0011(1) defines a compensable "injury" as being a work-related traumatic event or series of traumatic events that causes a harmful change in the human organism that is evidenced by objective medical findings. Thus, a series of traumatic events must proximately cause a harmful change that is evidenced by objective medical findings in order to come within the definition of "injury." For the purposes of Chapter 342, the words "injury," "injuries," and "objective medical findings" are legal terms of art. KRS 342.0011(33) states that the term "objective medical findings" includes "information gained through direct observation and testing of the patient applying objective or standardized methods." In *Gibbs v. Premier Scale Co./Indiana Scale Co.,* 50 S.W.3d 754 (Ky.2001), the court determined that a diagnosis may comply with the requirements of KRS 342.0011(1) and (33) if it is based upon symptoms of a harmful change that are confirmed by direct observation and/or testing applying objective or standardized methods. The court explained that the term "testing" does not require the use of sophisticated diagnostic tools and that the statute does not require both testing and observation.

The court also explained that subjective factors cannot be avoided when collecting and interpreting medical information but that their effect is decreased by the use of standardized methods. What results is a more accurate and objective assessment of the patient's condition.

■ The parties stipulated that the claimant sustained work-related injuries on March 19, 2002, and continued to experience cumulative trauma. She filed her claim on October 19, 2004. Her permanent impairment rating did not increase after October 19, 2002, but *FEI Installation, Inc. v. Williams,* 214 S.W.3d 313 (Ky.2007), explains that impairment is "a loss, loss of use, or derangement of any body part, organ system, or organ function." It demonstrates that a harmful change in the human organism has occurred. *FEI Installation, Inc. v. Williams* explains that the post–1996 Act equates impairment and disability. Thus, KRS 342.020(1) requires evidence that work-related trauma has caused impairment, but it does not require the impairment to rise to a level that warrants a permanent impairment rating, *i.e.,* disability sufficient for permanent income benefits.

■ The reports from Drs. Nickerson and Kriss provided substantial evidence that the claimant's pre-existing condition was work-related, that her symptoms from the condition abated when she did not perform repetitive work, and that the frequent, repetitive right-handed motions required by her work exacerbated the condition, causing symptoms in her right upper extremity. The reports indicated that the physicians based their conclusions on physical examinations, diagnostic testing, and the use of standardized methods, including those for assessing the accuracy of the claimant's statements regarding the existence and progression of her symp-

toms. Their testimony complied sufficiently with the standard described in *Gibbs v. Premier Scale Co./Indiana Scale Co., supra,* to prove that trauma incurred on and after October 19, 2002, exacerbated her pre-existing condition, causing it to continue to be symptomatic. In other words, the trauma caused a new injury that was not time-barred. Because their testimony also provided substantial evidence that the symptoms necessitated ongoing medical treatment, the ALJ did not err in awarding benefits under KRS 342.020(1).

The decision of the Court of Appeals is affirmed.

All sitting. All concur.