RENDERED: AUGUST 27, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1492-WC

WASTE MANAGEMENT                               APPELLANT


                   PETITION FOR REVIEW OF A DECISION
v.               OF THE WORKERS' COMPENSATION BOARD
                     ACTION NO. WC-18-01641


JEFFREY MADDOX;
HONORABLE CHRIS DAVIS, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                         APPELLEES


OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: GOODWINE, KRAMER, AND MAZE, JUDGES.

MAZE, JUDGE: Waste Management petitions for review from an opinion of the

Workers' Compensation Board (Board) which vacated and remanded an order by

the Administrative Law Judge (ALJ) dismissing a claim brought by Jeffrey

Maddox based on his failure to give timely notice of a cumulative trauma injury. Waste Management argues that the Board substituted its judgment for the ALJ concerning when Maddox was told that his injury was work-related and whether Maddox's delay in reporting that diagnosis was excusable. We agree with Waste Management that there was substantial evidence to support the ALJ's inference that Maddox's physician advised him that the injury was work-related six months before Maddox filed his claim. However, we agree with the Board that the ALJ failed to properly consider whether Maddox's delay was excusable under the circumstances presented in this case. Hence, we affirm in part, reverse in part, and remand this matter for additional findings on the latter issue as directed by the Board.

Maddox began working for Waste Management in 1990 as a garbage tipper. For the first three years of his employment, he had to lift the garbage bins. Thereafter, Waste Management began using a power lift to lift the bins. From that time, Maddox continued to lift heavy items including mattresses and appliances.

Maddox filed a Form 101 on November 17, 2018, alleging a cumulative trauma low back injury resulting from several years of employment as a garbage tipper for Waste Management, manifesting on December 10, 2016. Maddox testified that, in December 2016, the bar broke on one of the bins, hitting him in the upper chest area. He landed on his back with the bin on top of him.

The driver of the truck pulled the bin off Maddox and then called Waste Management to take Maddox back to the shop. Waste Management requested the company doctor examine him.

Maddox returned to work while continuing to see physicians for back pain. His last date of paid employment with Waste Management was in April 2018. Waste Management administratively terminated him six months later due to his failure to return to work.

A great deal of Maddox's testimony concerned his inability to remember when he was examined and when his physicians informed him that his condition was work-related. Maddox repeatedly stated that he could not remember meetings with physicians or what they had told him at the time. The ALJ acknowledged the evidence that Maddox suffers from intellectual deficiency, as evidenced by the assessment of Robert Piper.

While Maddox has a high school diploma, testing showed he has a first-grade equivalent in word reading, a second-grade equivalent in sentence comprehension, a first-grade equivalent in spelling, and a second-grade equivalent in math computation. Based on these results, Piper placed Maddox in the lower extreme range. In his testimony, Maddox also displayed a lack of comprehension concerning the meanings of ordinary words. In his findings, the ALJ noted that,

"[t]he academic testing from Mr. Piper does make me believe that [Maddox] lacks the wherewithal to report or pursue his claims."

In support of his claims, Maddox presented medical evidence from examinations occurring both before and after the accident. Dr. Gregory N. Nazar examined Maddox on March 17, 2013, on referral from Dr. Lockett. On physical examination, Maddox had a slow gait and decreased range of back motion. Formal testing showed a normal gait and he could get up and down from a seated position without difficulty and had good maneuverability of the back. Dr. Nazar noted the discrepancy between the informal and formal examination findings. An MRI was ordered.

Dr. Robert Hendren saw Maddox on April 5, 2013. Maddox reported severe back pain radiating down the leg and buttocks on the right. Straight leg raising test was positive on the right. Lumbar x-rays showed arthritic changes and spondylolisthesis at the intersection of L5 and the sacrum. A herniated lumbar disc was suspected. Dr. Hendren recommended a lumbar CT scan and referred Maddox to Dr. Nazar. The assessment was spondylolisthesis, osteoarthritis, and herniated lumbar disc. On April 19, 2013, Maddox reported a gradual onset of back pain. X-rays and MRIs found spondylolisthesis and degenerative disc disease. Straight leg raising tests were positive bilaterally. Maddox was not allowed to return to work until examined by Dr. Nazar. Dr. Hendren stated Maddox would probably

not be able to return to heavy work and would probably be disabled without surgical intervention. Dr. Hendren examined Maddox on May 2, 2013, for chronic back pain. Physical examination found tenderness over the L5 vertebra in the sacral area and pain with bilateral straight leg raising tests. The assessment was spondylolisthesis and back pain. Maddox followed-up on May 16, 2013, and May 30, 2013, for spondylolisthesis/lumbar strain.

On March 6, 2015, Maddox was examined for pain in the left side of the back and left leg numbness. He reported heavy lifting while working. He had slight tenderness in the left paravertebral musculature. Lumbar x-rays noted minimal arthritic change. Maddox was diagnosed with a lumbar strain, spondylolisthesis, herniated lumbar disc, and seizure disorder.

Dr. Hendren next examined Maddox on December 10, 2016, for complaints of leg numbness and pain with coughing. Maddox had back pain on the left side in the sacral iliac area. Maddox reported tenderness on the paravertebral muscular left side. Straight leg raising test was positive on the left. Dr. Hendren suspected a herniated lumbar disc on the left side; his condition is probably a longstanding work-related injury; and he is disabled and not likely to improve. On February 28, 2017, Maddox reported low back pain radiating down the left leg with numbness. X-rays showed some arthritic changes and slight subluxation of the L5-S2 area. An injection was administered.

On April 8, 2017, Maddox had left leg numbness, left sided back swelling and pain, and blackish-purple left toes. The back pain went down the left leg. Maddox was referred to physical therapy. On May 6, 2017, Maddox had a chronic lumbar sprain and a recent back injury at work. On September 23, 2017, the pain was bothersome with work as work requires he tug, pull, lift, and bend. The physical examination noted no tenderness to the lumbar spine, soreness, and muscle puffy in the lower right back similar in the anterior thigh on the right. Dr. Hendren stated Maddox's issues might be more of a repetitive use type situation. Dr. Hendren believed Maddox's pain was sciatica and began treating him with muscle relaxers and anti-inflammatory medication. On November 16, 2017, Maddox had back pain and pain down the right leg. An injection was administered for sciatica.

Maddox was examined on January 27, 2018, for right leg pain and numbness and occasional low back pain. He reported falling. X-rays showed anterolisthesis at L4-L5 level. Maddox was referred to a neurologist.

Dr. Hendren examined Maddox on March 13, 2018, for low back pain with radiation down the right leg. On April 26, 2018, Maddox complained of lower back pain with radiculopathy in the right. He reported medications and steroid injections had not helped the pain. Maddox's pain in the right leg had been ongoing for several weeks with worsening in the past few days. Lumbar x-rays

-6-

show spurring and slight subluxation of the L5-S1 joint. A lumbar MRI was ordered and Maddox was restricted from work until after the MRI. Maddox returned on May 25, 2018, for back pain. He had tenderness over the vertebra of the lumbar/lumbosacral spine and paravertebral muscles. Dr. Hendren stated Maddox was completely and permanently disabled from any kind of gainful employment due to an old back trauma and repetitive motion of lifting heavy trash cans over the years.

On June 2, 2018, Maddox was unable to return to work due to chronic back pain from heavy lifting work as a garbage tipper. Physical examination found tenderness over the L5-S2 area and generalized tenderness of the spinal processes and the bilateral vertebra musculature. The assessment was osteoarthritis. Stooping, lifting, and bending causes back pain. Dr. Hendren indicated Maddox was permanently disabled from gainful employment.

Records from Flaget Memorial Hospital indicate an April 19, 2013, lumbar MRI revealed degenerative signal changes at L5-S1 with minimal spondylolisthesis, broad-based midline protrusion, and high-grade left L5-S1 neural foraminal compromise. Maddox filed records from Jewish Hospital-Shelbyville. A May 3, 2018, lumbar MRI revealed grade I spondylolisthesis at L5 on S1 with some endplate narrow edema inferior endplate of L5 and mild L5-S1 degenerative disc changes, bilateral L5-S2 foraminal stenosis due to listhesis, and

bilateral L5 pars defects.  A CT scan in 2010 found bilateral L5 pars defect and mild bilateral lower lumbar spine facet arthropathy.  A December 31, 2018 lumbar MRI revealed grade 1 anterolisthesis of L5 on S1 with spondylolysis and mild retrolisthesis of L3 on L4 and L2 on L3.  An April 12, 2019, lumbar scan showed first-degree spondylolisthesis of L5-S1 stable, bilateral spondylolysis at L5-S1, intact orthopedic hardware, and status post laminectomy at the L5 level.

Dr. Nazar performed an independent medical examination (IME) of Maddox on August 23, 2019.  Dr. Nazar noted Maddox had been off work for 18 months.  Maddox reported back pain with right anterior thigh pain, which gradually worsened due to his work activities.  Dr. Nazar diagnosed L5-S1 spondylolisthesis with progressive and chronic low back pain secondary to cumulative trauma precipitated by heavy lifting repetitively within his work environment.  The initial reporting date was April 5, 2013.  Dr. Nazar noted Maddox presented for severe pain in his back radiating down the back of his legs and buttocks on the right associated with significant injury to his lower back about a year-and-a-half prior to the evaluation, which markedly aggravated his situation. He was no longer able to work and eventually underwent surgical intervention after preoperative MRI imaging demonstrated edema in the area of a pars defect at his L5-S1 spondylolisthesis suggesting an acute injury to his lower back.  Dr. Nazar assigned a 27% impairment rating pursuant to the 5th Edition of the

American Medical Association, *Guides to the Evaluation of Permanent Impairment* (*AMA Guides*). He indicated Maddox had no pre-existing impairment.

Dr. Ellen M. Ballard performed an IME on December 16, 2019. When asked about any prior back pain, Maddox stated he could not remember. During the evaluation, Maddox reported an injury date of December 10, 2018. Dr. Ballard reviewed records from Drs. Hendren and Lockett from January 26, 2008, through June 22, 2018; Dr. Nazar from March 17, 2013, through August 23, 2019, and his August 23, 2019 IME report; Flaget Memorial Hospital from June 2015 to June 4, 2015; Park DuValle Community Health Center, Dr. Myers, Jewish Hospital, and Kort Rehab Physical Therapy in 2017. Dr. Ballard diagnosed low back pain with grade I spondylolisthesis, status post fusion at L5-S1, history of multiple episodes of low back pain with various treatments and history of seizures. She opined Maddox had an active condition of which he complained. Dr. Ballard stated Maddox does not have an impairment rating pursuant to the *AMA Guides* related to the alleged work injury. She stated there is no evidence he has a work-related condition. His fusion was due to his non-work-related L5-S1 spondylolisthesis.

Dr. Nazar completed a rebuttal report on April 20, 2020. Dr. Nazar stated Maddox had a pre-existing spondylolisthesis at L5-S1 that made him more susceptible to injury from his strenuous work activities. He had a cumulative

trauma injury related to heavy lifting occurring over the course of several years. His pain related to his work began as far back as 2013. Dr. Nazar felt Dr. Ballard was oversimplifying and ignoring the fact that Maddox has a cumulative trauma injury. He stated she appeared to be "trying to pin this down to a specific injury date" which Dr. Nazar felt was a wrongful characterization and conclusion.

Dr. Mark Allen Myers examined Maddox on December 27, 2018. Maddox reported constant back pain and paresthesia bilaterally in the anterior thigh, anterior leg, and foot. He developed lumbar pain after a motor vehicle accident in 2000 with episodic back pain since the accident. An abdominal CT in 2010 showed spondylolysis. Maddox reported bilateral leg symptoms of a year's duration and in May 2018, the symptoms worsened without trauma. He also reported constant back pain. Maddox had physical therapy and steroids without improvement of symptoms. The assessment was chronic back pain with leg symptoms and trouble ambulating consistent with abnormalities seen on an MRI. Maddox followed-up on January 4, 2019, with no change in his symptoms. X-rays showed grade II isthmic spondylolisthesis at L5-S1 with an 11 mm slip. Dr. Myers stated Maddox has had symptoms for ten years with progression over time. Dr. Myers performed a L5-S1 laminectomy, bilateral partial facetectomy and medial foraminotomy, and instrumented posterolateral fusion on February 12, 2019.

Finally, Jason Warrell, Waste Management's district operations manager, testified at the hearing. He testified that employees are advised on a yearly basis of the requirement to immediately report all injuries. He also testified that Maddox was written up in 2001 for failing to report an injury immediately. Warrell further testified that Maddox reported other work injuries since that time. Warrell stated that Waste Management did not receive notice of the cumulative trauma injury until Maddox filed his claim in November 2018.

After a consideration of the evidence, the ALJ found that Maddox presented substantial evidence of a cumulative trauma injury dating back to at least 2013. Based on Maddox's uncontested testimony about his job duties, the ALJ also found that Maddox's low back condition is the result of work-related cumulative trauma. However, the ALJ found that Maddox failed to provide Waste Management with timely notice that his injury was work-related prior to filing his claim on November 27, 2018.

With respect to the sufficiency of the notice, the ALJ recognized that Maddox was not required to give notice of cumulative trauma until a physician informed him that his cumulative trauma injuries were work-related. The ALJ also acknowledged the lack of any definitive medical evidence regarding when Maddox was informed that his injuries were work-related. But the ALJ found Maddox's

repeated statements that he could not recall when he had been informed to be not credible.

In my analysis, findings and Orders below I have given due attention to each of the two primary sections based on the evidence of record and the parties' arguments. However, I would be remiss, as it is relevant to my decision and the parties should be apprised of the basis of my decision, if I did not point out that the inconsistencies in the Plaintiff's stories, which he has attempted, through counsel, to portray as due to his "weak-mindness" [sic] have influenced my decision. I do not mean, exactly, that I think he is lying in the traditional sense, though he [may be]. I mean to say that he has the burden of proof and persuasion in this claim and inconsistencies, the "I don't remembers" and the time gaps between several relevant points leave me genuinely unable to determine that he has proven his case.

It [may be], as the Plaintiff argues that his lack of sophistication and/or weakmindness [sic] has led to these lapses. But even as to that, I have no real proof and in fact, the Plaintiff has reported work-related accidents in the past. He is a high school graduate. The academic testing from Mr. Piper does make me believe that the Plaintiff lacks the wherewithal to report or pursue his claim. Finally, when "recalling" the alleged details of the alleged December 10, 2016 accident he recalls the details quite well.

. . .

While requirements that uncontradicted evidence must be accepted are generally true, they are not universally true. One of the exceptions in which an ALJ may reject uncontradicted testimony is when the witness is an interested party. Surely, there is no more interested party herein than the Plaintiff. It is important that in the

line of cases setting forth when otherwise uncontradicted evidence maybe rejected by a trier of fact that with respect to an interested witness that is sufficient, i.e. that the witness is an interested witness. There is no need to recite to inconsistencies, inadequate history, surveillance videos or even a general unease with the Plaintiff's testimony. I am free, as a matter of law, to reject anything and everything he says, if I wish. *Moore v. Versnick Healthcare Center Inc*., [No. 2002-SC-0531-WC,] 2003 WL 21259485 [Ky. May 22, 2003], *Franklin Insurance Agency v. Simpson*, [No. 2007-SC-0748-WC,] 2008 WL 5051613 [Ky. Nov. 26, 2008] (quoting [3A. Larson, *Workmen's Compensation Law*, § 8020 (9th ed. 1976)]), *Grider Hill Dock, Inc. v. Sloan*, 448 [S.W.2d] 373 (Ky. [] 1969).

However, to put it simply, I am dubious that no doctor ever discussed with him that his work was causing or contributing to his low back pain. Pain which existed for years prior to his last date of work and which caused him to seek medical treatment years prior to his last date of work and which his doctors always believed was work-related. I simply cannot, beyond a shadow of a doubt, prove they spoke to him about it. However, that is not the standard anywhere in our workers' compensation system.

I also find it relevant that the Plaintiff never said he was not told his condition was work-related, simply that he cannot remember if he was told it was work-related. The standard is he must report his cumulative trauma injury when he was told it was work-related, not if he can predict years in the future if he will remember he was told it was work-related.

Finally, I have the medical records from Dr. Hendren. Those medical records show that for at least three years, 2013-2016, that the Plaintiff was seeing Dr. Hendren for low back pain and that the Plaintiff's work was discussed relevant to that pain. Both how the work

-13-

he did was heavy and that he might be disabled from it. The first such record is dated April 9, 2013 and states the low back injury is of gradual onset and notes his job duties.

The records continue to mention his low back pain and his work until the May 25, 2018 record, which specifically states that the low back injury is work-related to years of heavy lifting. The record also notes that the doctor spent 15 minutes with the Plaintiff discussing the low back problems. Thus, it is reasonable to conclude, [it] would [be] the latest possible date at which a physician informed the Plaintiff his condition was work-related, not the August 23, 2019 IME with Dr. Nazar.

Frankly given the summary of medical records, by date, in Dr. Nazar's report, not all of which were actually filed into evidence, the Plaintiff's history of appointments with Dr. Hendren and the clear knowledge of Dr. Hendren of the Plaintiff's work I don't think it would be too much of a stretch to say the Plaintiff was probably told by a doctor prior May 25, 2018 that his condition was work-related.

Regardless, the record also demonstrates that the Plaintiff did not provide any notice of a cumulative trauma claim prior to filing is [sic] claim on November 27, 2018, six months after May 25, 2018, or, possibly, in October, 2018, but there is no documentation to prove that. Regardless, my findings would be the same.

The Plaintiff does not argue he provided notice prior to that date. In fact, he admits it but argues he was not required to give notice until August 23, 2019. The date Dr. Nazar examined him.

The testimony of Mr. Warrell is clear that the Plaintiff did not provide notice of a cumulative trauma claim as soon as practicable after being told by a physician it was work-related. The business records

-14-

introduced via Mr. Warrell's testimony demonstrate two things.

One, the employer had a policy on notice that, in writing, specifically addressed what attorneys would call cumulative trauma injuries. "Similarly, if you experience pain from performing repetitive motion tasks, you must report it immediately. Repetitive motion disorders, if not treated promptly, can result in months of lost time from work." (Waste Management Accident/Injury Reporting).

Two, the Plaintiff has reported injuries in the past. He was well aware of how to report injuries and his responsibility to report an injury. Yet he did not.

As a result of the delay, the Defendant had little to no way to investigate the claim until months had passed, further making his poor memory, upon which he relies, even less reliable. The Plaintiff waited, at a minimum, five months to report his injury. The Plaintiff has not justified the delay, though he has argued the correct date should be August 23, 2019, after the claim was filed, requiring notice be deemed sufficient. The delay is not excused[,] and notice is insufficient and inadequate.

Maddox filed a Petition for Reconsideration requesting additional findings of facts regarding the ALJ's determination this claim was barred for failure to provide due and timely notice. The ALJ denied the motion, concluding that Maddox's testimony did not compel a conclusion that he provided notice of his back injury prior to filing of the claim.

On appeal, the Board vacated the ALJ's order dismissing Maddox's claim. The Board recognized that KRS[1] 342.185(1) requires notice of an accident shall be given, "as soon as practicable" and that the claim for benefits to a resulting injury must be filed within two years "after the date of accident" or following the suspension of payment of income benefits, whichever is later. In injury claims caused by cumulative trauma, the date for giving notice and for clocking the statute of limitations is triggered by the date of manifestation. *Special Fund v. Clark*, 998 S.W.2d 487 (Ky. 1999). An injury caused by cumulative trauma manifests when "a worker discovers that a physically disabling injury has been sustained [and] knows it is caused by work." *Alcan Foil Prod., a Div. of Alcan Aluminum Corp. v. Huff*, 2 S.W.3d 96, 101 (Ky. 1999).

The Board noted that Maddox claimed cumulative trauma injuries to his lumbar spine manifesting on December 16, 2016, as the result of years of work for Waste Management as a garbage tipper. However, the Board concluded that the ALJ relied on speculation to infer that Maddox was advised by a physician that this condition was work-related.

> The evidence concerning whether Maddox was ever advised by a doctor that he suffered a work-related cumulative trauma low back injury is anything but clear. The record is replete with testimony from Maddox stating he suffered a specific injury on one of two dates, was advised at some point in time, by a doctor, that his

---

[1] Kentucky Revised Statutes.

-16-

condition was work-related, and yet testified he was never advised his condition was work-related. The basic takeaway from Maddox's testimony is it is not clear on when, or if, he was advised his condition is work-related. In determining Maddox did not provide due and timely notice, the ALJ inferred Maddox was advised by his physician his condition is work-related, at the latest on May 15, 2018, yet did not provide notice until months later which he deemed was untimely.

We do not believe this decision is supported by the case law and evidence of record. It is clear that Maddox could not recall ever being advised by any of his physicians that his low back condition, which necessitated fusion surgery, was caused by his work as a tipper for Waste Management. Maddox's testimony clearly indicates he suffers from intellectual deficiency as evidenced by the assessment of Robert Piper, placing Maddox in the lower extreme range, and by his lack of knowledge of what the word "valid" means in regards to a "valid driver's license". In fact, the ALJ opined that Maddox lacks the mental capacity to report or pursue a claim. Furthermore, the ALJ cannot logically assume that because the medical records of May 18, 2016 reflect Dr. Herndon felt Maddox's back condition was work related, this fact was ever explained to Maddox. Whether Maddox had the intellectual capacity to understand he then possessed a work-related condition and what his obligations were thereafter is also in question.

Therefore, we believe the determination of the ALJ, that Maddox received notice from his physicians that his cumulative trauma low back injury was work-related, is not supported by substantive evidence of record. That determination resulted from an unreasonable inference drawn by the ALJ.

Based on this conclusion, the Board vacated the ALJ's order and

remanded the matter for additional proceedings. While the Board did not direct the

ALJ to reach any particular result, the Board instructed the ALJ to determine when, if ever, Maddox was advised, by a physician, that his cumulative trauma injuries to his back were caused by his work at Waste Management. In making this determination, the Board further instructed the ALJ to consider the impact of Maddox's intellectual deficiency concerning his ability to understand the necessity for giving notice as well as his ability to understand what the physician might have told him. Finally, the Board directed the ALJ to determine whether Maddox's failure to give timely notice due to his intellectual deficiencies was excusable pursuant to KRS 342.200. Waste Management now petitions for review of this order.

It is well-established that a claimant in a workers' compensation claim bears the burden of proving each essential element of his claim. *Burton v. Foster Wheeler Corp.*, 72 S.W.3d 925, 928 (Ky. 2002). Where the party that bears the burden of proof is unsuccessful before the ALJ, the question on appeal is whether the evidence is so overwhelming upon consideration of the record as a whole as to compel a finding in claimant's favor. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). In order to reverse the decision of the ALJ, it must be shown there was no substantial evidence of probative value to support his decision. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). As the fact-finder, the ALJ has the sole authority to judge the weight, credibility, substance, and

inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Where the evidence is conflicting, the ALJ has the sole authority to believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977). The function of this Court's review is to correct the Board only where the Court perceives that the Board has overlooked or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

The only disputed question in this case is whether Maddox provided timely notice of his cumulative trauma injury to Waste Management. As the Board recognized, KRS 342.185 requires that a claimant provide notice of an accident "as soon as practicable[.]" In cases involving cumulative trauma, the date for giving notice commences "[o]nce a worker is aware of the existence of a disabling condition and the fact that it is caused by work[.]" *Special Fund v. Clark*, 998 S.W.2d at 490. *See also Consol of Kentucky, Inc. v. Goodgame*, 479 S.W.3d 78, 82 (Ky. 2015). The ALJ found that Maddox's cumulative trauma was caused by his work and manifested following the injury on December 16, 2016.

Waste Management does not dispute this finding. Rather, it argues that there was substantial evidence to support the ALJ's conclusion that Maddox

-19-

was advised that his condition was related to his work no later than May 25, 2018. Dr. Hendren's treatment note of that date states that Maddox "[a]ppears to be completely and permanent [sic] disabled for any kind of gainful employment due to old back trauma, repetitive motion of lifting heavy trash cans over the years and working waste management." The note further recites that Dr. Hendren advised Maddox "to stay off work and avoid any kind of heavy work." Likewise, Dr. Hendren's note from June 22, 2018, states that Maddox was "unable to return to work due to back pain, chronic pain due to heaving lifting working as a garbage tipper." Since Dr. Hendren determined at that point that Maddox's condition was work-related, Waste Management argues that the ALJ could reasonably infer that he informed Maddox of this conclusion as well.

However, the ALJ did not find Dr. Hendren's notes to constitute definitive evidence that Maddox was told by a physician that his cumulative trauma was caused by his work. Instead, the ALJ drew that inference from the notes and the other evidence. The ALJ also rejected Maddox's testimony that he could not remember being told that his condition was work related, finding it to be not credible. The Board found both of these inferences to be unreasonable and not supported by substantial evidence of record.

In the role as fact-finder, an ALJ may refuse to accept even uncontradicted evidence in the record. *Collins v. Castleton Farms, Inc.*, 560

-20-

S.W.2d 830, 831 (Ky. App. 1977). But in such cases, the fact-finder must state its reasons for rejecting the only evidence in the record; *e.g.*, that the testimony was inherently improbable, or so inconsistent as to be incredible, that the witness was interested, or that his testimony on the point at issue was impeached by falsity in his statements on other matters. In the absence of some explanation furnished for the disregard of all uncontradicted testimony in the record, the fact-finder's conclusions will be reversed as arbitrary and unsupported. *Id.* (citing 3A. Larson, *Workmen's Compensation Law* § 80.20 (9th ed. 1976)). *See also Franklin Ins. Agency, Inc. v. Simpson*, No. 2007-SC-000748-WC, 2008 WL 5051613 (Ky. Nov. 26, 2008).

Here, the ALJ set forth his reasons for finding Maddox's testimony to be not credible. Most significantly, the ALJ relied upon Dr. Hendren's May 25, 2018 note stating that he had determined the cumulative trauma to be work-related as of that date. And the ALJ noted that Maddox did not deny being told that his condition was work-related, only that he could not remember being told. From these facts, the ALJ drew the inference that Maddox was told that his condition was work-related no later than May 25, 2018. We cannot find that this inference was unreasonable in light of all of the evidence of record. Consequently, we must conclude that the Board clearly erred in setting aside the ALJ's finding on this basis.

The Board also instructed the ALJ to determine whether Maddox's failure to give timely notice was excused due to his intellectual deficiencies and inability to understand what physicians might have told him. KRS 342.200 excuses timely notice if the employer had notice of the injury or where the delay "was occasioned by mistake or other reasonable cause." KRS 342.185(1) contains no specific time frame but leaves the ALJ with discretion to determine whether notice was given "as soon as practicable" under the specific circumstances of the case. *Newberg v. Slone*, 846 S.W.2d 694, 700 (Ky. 1992). While lateness of notice may be excused for various reasons, "the burden is on the claimant to show that it was not practicable to give notice sooner." *Id.*

In this case, the ALJ recognized that Maddox has significant intellectual disabilities and "lacks the wherewithal to report or pursue his claims." Nevertheless, the ALJ determined that Maddox should have reported his cumulative trauma injury because he had reported other injuries to Waste Management in the past. However, the prior injuries which Maddox reported involved specific work-related injuries, not cumulative trauma. The distinction is significant because Maddox may not have been able to understand his physician's statement that the cumulative trauma injury was work-related because there was no specific initiating injury.

Under the circumstances, we agree with the Board that the ALJ failed to properly consider the impact of Maddox's intellectual deficiencies concerning his ability to understand the necessity for giving notice and to understand what his physicians might have told him. Considering the undisputed evidence concerning Maddox's intellectual limitations, his failure to provide timely notice to Waste Management may be excusable under KRS 342.200. Consequently, we agree that this issue must be remanded for additional findings on this question alone as directed by the Board.

Accordingly, the October 30, 2020 Opinion of the Workers' Compensation Board is affirmed in part, reversed in part, and remanded for additional findings on whether Maddox's delay in providing notice was excused.

ALL CONCUR.

BRIEF FOR APPELLANT:

David D. Black
Louisville, Kentucky

BRIEF FOR APPELLEE
JEFFREY MADDOX:

James D. Howes
Louisville, Kentucky